STATE OF NORTH CAROLINA
v.
GLENN EDWARD BENTERS, Defendant

No. COA13-305

Filed 3 December 2013

**Search and Seizure—motion to suppress drugs—affidavit supporting search warrant not supported by probable cause**

The trial court did not err in a drug possession case by suppressing the evidence against defendant. The trial court's findings of fact, both challenged and unchallenged, were supported by competent evidence. Further, the trial court's conclusions of law that the affidavit supporting the search warrant was not supported by probable cause was based on competent findings of fact.

Judge HUNTER, Robert C., dissenting in separate opinion.

Appeal by the State from order entered 21 September 2012 by Judge Carl R. Fox in Vance County Superior Court. Heard in the Court of Appeals 11 September 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Brock, Payne & Meece, P.A., by C. Scott Holmes, for defendant-appellee.*

BRYANT, Judge.

A motion to suppress evidence should be granted where the information presented in the search warrant has not been independently verified or corroborated by the requesting officer. Where a trial court makes competent findings of fact and conclusions of law in granting a motion to suppress evidence, we will not disturb those findings on appeal.

On 29 September 2011, Detective Justin Hastings, a narcotics detective with the Franklin County Sheriff's Office, contacted Lieutenant Joseph Ferguson of the Vance County Sheriff's Office regarding a drug investigation that began in Franklin County. A confidential informant had informed Det. Hastings that defendant Glenn Edward Benters ("defendant") was running an indoor marijuana growing operation on

defendant's property. The informant further stated that defendant "also maintained a residence in Myrtle Beach, South Carolina." When shown a driver's license photograph of defendant by Det. Hastings, the informant positively identified the person in the photograph as defendant.

Det. Hastings contacted Lt. Ferguson and Special Agent Lynn Gay of the State Bureau of Investigation and relayed the information learned from the informant. Det. Hastings also subpoenaed information on 29 September 2011 regarding power usage for defendant's property from Progress Energy. The report from Progress Energy provided the kilowatt usage and current subscriber information for the property. Det. Hastings testified that the Progress Energy report was "indicative of [a] marijuana grow operation[] base[d] on [the] extreme high kilowatt usage" at defendant's property because "the lows and the highs [were] not consistent of that with any type of weather patterns."

Based on the information from Progress Energy regarding defendant's property's energy use, Det. Hastings travelled to Vance County to meet with Lt. Ferguson regarding the investigation. The officers were acting in accordance with a mutual aid agreement between the Franklin and Vance County Sheriffs' Offices. It was determined that a surveillance of defendant's property should be conducted from an open field near the residence.

Upon arriving at defendant's property, Lt. Ferguson and the other accompanying officers observed a locked and posted gate across the drive leading to defendant's residence. Lt. Ferguson testified that he had been to defendant's residence for a prior incident and that the gate had been unlocked and open at that time.

Lt. Ferguson and the officers decided to use a "well-worn path for foot traffic" on the adjoining property to reach an open field from which defendant's property could be observed. The path led the officers to an open field on the adjoining lot where they could see the rear of defendant's residence, a building adjacent to the residence, a greenhouse, and other outbuildings. The officers observed a red pick-up truck parked near a shed on the residence; Lt. Ferguson testified that he had never observed defendant driving that particular vehicle. Music was also heard emanating from the property. Lt. Ferguson used binoculars to observe "old potting soil bags, cups, trays, fertilizer bags, pump sprayers, [and] a greenhouse, but no fields were in cultivation." Lt. Ferguson testified that the greenhouse appeared to be unused and was in a general state of disrepair. Lt. Ferguson noted that defendant's property did not contain any evidence of a garden plot, potted plants, or

fields in cultivation. Det. Hastings testified that, based on his experience with prior growing operations, the gardening supplies observed were used by marijuana growers.

The officers then returned to the entrance of defendant's property and entered the property through a farm gate at the driveway entrance. Lt. Ferguson decided to speak with defendant through a "knock and talk" approach. Lt. Ferguson knocked on the rear side door of defendant's premises, but received no answer. The officers then approached a white outbuilding from which music was emanating. While knocking on the door of the building, officers smelled a strong odor of growing marijuana. The building was padlocked and no one responded to the officers' knocks. Officers also observed "thick mil plastic," which is used to shield grow lighting from observation, around the door of the building.

Upon exiting the property, several officers were left at the entrance of the property to secure the premises while Lt. Ferguson and other officers went to the Sheriff's Office to obtain a search warrant for the property. In the Search Warrant Affidavit, Lt. Ferguson stated that:

> On September 29, 2011 Lt. Ferguson, hereby known as your affiant, received information from Detective J. Hastings of the Franklin County Sheriff's Office Narcotics Division about a residence in Vance County that is currently being used as an indoor marijuana growing operation. Detective Hastings has extensive training and experience with indoor marijuana growing investigations on the state and federal level. Within the past week Hastings met with a confidential and reliable source of information that told him an indoor marijuana growing operation was located at 527 Currin Road in Henderson, North Carolina. The informant said that the growing operation was housed in the main house and other buildings on the property. The informant also knew that the owner of the property was a white male by the name of Glenn Benters. Benters is not currently living at the residence, however [he] is using it to house an indoor marijuana growing operation. Benters and the Currin Road property is also known by your affiant from a criminal case involving a stolen flatbed trailer with a load of wood that was taken from Burlington, North Carolina. Detective Hastings obtained a subpoena for current subscriber information. [sic] Kilowatt usage, account notes, and billing information for the past twenty-four months in association with the

STATE v. BENTERS

[231 N.C. App. 295 (2013)]

527 Currin Road Henderson NC property from [the] Progress Energy Legal Department. Information provided in said subpoena indicated that Glenn Benters is the current subscriber and the kilowatt usage hours are indicative of a marijuana grow operation based on the extreme high and low kilowatt usage.

Also on 9-29-2011 Detective Hastings and your affiant along with narcotics detectives from the Vance and Franklin County Sheriffs' Office as well as special agents with the North Carolina S.B.I. traveled to the residence at 527 Currin Road Henderson NC and observed from outside of the curtilage multiple items in plain view that were indicative of an indoor marijuana growing operation. The items mentioned above are as followed; [sic] potting soil, starting fertilizer, seed starting trays, plastic cups, metal storage racks, and portable pump type sprayers. Detectives did not observe any gardens or potted plants located around the residence. Detectives observed a red Dodge full size pickup truck parked by a building located on the curtilage of the residence and heard music coming from the area of the residence.

After observing the above listed circumstances, detectives attempted to conduct a knock and talk interview with anyone present at the residence. After knocking on the back door, which your affiant knows Benters commonly uses based on previous encounters, your affiant waited a few minutes for someone to come to the door. When no one came to the door, your affiant walked to a building behind the residence that music was coming from in an attempt to find someone. Upon reaching the rear door of the building, your affiant instantly noticed the strong odor of marijuana emanating from the building. Your affiant walked over to a set of double doors on the other side of the building and observed two locked double doors that had been covered from the inside of the building with thick mil black plastic commonly used in marijuana grows to hide light emanated by halogen light[s] typically used in indoor marijuana growing operations. Thick mil plastic was also present on windows inside the residence as well.

A search warrant was obtained and executed on 29 September 2011, resulting in the seizure of 91.25 pounds of marijuana, a variety of supplies used for growing marijuana, drug packaging items and paraphernalia, and multiple firearms from the property.

On 30 September 2011, defendant was charged with manufacturing marijuana, trafficking marijuana by manufacture, trafficking marijuana by possession, possession with intent to sell or deliver fifty-five marijuana plants, maintaining a residence for keeping and selling a controlled substance, maintaining a building for keeping and selling a controlled substance, and possession of drug paraphernalia. On 28 November 2011, defendant was indicted by the Vance County Grand Jury on all charges. Defendant filed a pretrial motion to suppress the evidence discovered during a search of his property pursuant to a search warrant. The matter was heard 11 June 2012. The trial court filed a written order on 24 September 2012 granting the motion.

The State appeals.

On appeal, the State argues that the trial court erred in suppressing the evidence against defendant. We disagree.

> In evaluating the denial of a motion to suppress, the reviewing court must determine whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law. The trial court's findings of fact on a motion to suppress are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. Indeed, an appellate court accords great deference to the trial court in this respect because it is entrusted with the duty to hear testimony, weigh [the evidence,] and resolve any conflicts in the evidence . . . . Conclusions of law are reviewed de novo and are fully reviewable on appeal.

*State v. Williams*, 366 N.C. 110, 114, 726 S.E.2d 161, 165 (2012) (citations and internal quotations omitted).

The State concedes that the "knock and talk" entry onto defendant's property was an illegal search, but argues that the search warrant remained valid because it was supported by probable cause through the informant and the utility bill. As such, we must consider whether the warrant, based on the statements of the informant, the utility bill,

and the officers' " " open fields" observations of defendant's property, was sufficient to establish probable cause.

"In determining . . . whether probable cause exists for the issuance of a search warrant, our Supreme Court has provided that the 'totality of the circumstances' test . . . is to be applied." *State v. Witherspoon,* 110 N.C. App. 413, 417, 429 S.E.2d 783, 785 (1993) (citations omitted). Under the "totality of the circumstances" test,

> [t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*State v. Arrington,* 311 N.C. 633, 638, 319 S.E.2d 254, 257-58 (1984) (citation omitted). "Under our statutes a magistrate issuing a warrant can base a finding of probable cause only on statements of fact confirmed by oath or affirmation of the party making the statement, or on information which the magistrate records or contemporaneously summarizes in the record [pursuant to] G.S. 15A-244; G.S. 15A-245(a)." *State v. Teasley,* 82 N.C. App. 150, 156-57, 346 S.E.2d 227, 231 (1986) (citation omitted).

Here, the State contests the trial court's Finding of Fact 2 and Conclusion of Law 1. In its Finding of Fact 2, the trial court found that "[p]rior to September 29, 2011, Detective Hastings received information from a confidential informant that the Defendant, Glenn Benters, was growing marijuana on his farm on Currin Road in Vance County. This confidential informant had not previously provided information to Detective Hastings that had later proven to be reliable." In its Conclusion of Law 1, the trial court stated that

> [i]nformation provided by a confidential informant who has not proven to be reliable by providing information which later proved to be truthful or resulted in arrests and convictions in the past, together with the power usage records for the Defendant's residence from Progress Energy, lacked sufficient "indicia of reliability" to establish probable cause for the issuance of a search warrant for the Defendant's property.

The State contends that the trial court's Finding of Fact 2 and Conclusion of Law 1 were erroneous because the trial court found that the informant "has not proven to be reliable by providing information which later proved to be truthful or resulted in arrests and convictions in the past . . . ." Det. Hastings testified at the suppression hearing that the informant was "used multiple times in the past, ha[d] always provided reliable information, who ha[d] [sic] conducted numerous controlled purchases, had been able to identify both marijuana, cocaine hydrochloride, cocaine base, on site and interact with those persons selling and using illegal substances." However, this Court has held that statements made after the issuance of a warrant regarding the reliability of the informant cannot be considered in determining whether the warrant was properly based on probable cause. *See State v. Newcomb*, 84 N.C. App. 92, 351 S.E.2d 565 (1987) (holding that in determining the validity of a warrant, only information presented at the time the warrant was issued can be considered, despite the requesting officer later testifying at a suppression hearing that he had "unintentionally and inadvertently" failed to provide information regarding the reliability of the informant in the warrant affidavit); *see also State v. Styles*, 116 N.C. App. 479, 483, 448 S.E.2d 385, 387 (1994) ("[P]ursuant to North Carolina General Statutes § 15A-245 . . . information other than that contained in the affidavit may not be considered by the issuing official in determining whether probable cause exists for the issuance of the warrant unless the information is either recorded or contemporaneously summarized in the record or on the face of the warrant by the issuing official."). As such, the testimony of Det. Hastings at the suppression hearing cannot be considered in evaluating whether the warrant was based on probable cause.

The trial court, in reviewing the sufficiency of the search warrant, was limited to the information presented to the magistrate at the time the warrant was requested. "The police officer making the affidavit [to accompany the search warrant] may do so in reliance upon information reported to him by other officers in the performance of their duties." *State v. Vestal*, 278 N.C. 561, 576, 180 S.E.2d 755, 765 (1971) (citation omitted). However,

> [p]robable cause cannot be shown by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based. . . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely

as a rubber stamp for the police. The issuing officer must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion. . . .

*State v. Edwards*, 286 N.C. 162, 167, 209 S.E.2d 758, 761-62 (1974) (citations and internal quotations omitted).

Here, Lt. Ferguson stated in the affidavit that Det. Hastings had met with a confidential informant who said that defendant was growing marijuana on his property. Lt. Ferguson described the informant as a "confidential and reliable source of information," but did not state on what prior occasions the informant's information had proved reliable, whether informant had personally witnessed defendant's grow operation, or that informant had purchased marijuana from defendant. Although the threshold for establishing an informant's reliability is low, that threshold must be met. *See State v. McKoy*, 16 N.C. App. 349, 351-52, 191 S.E.2d 897, 899 (1972) (holding that an "affiant's statement that [a] confidential informant has proven reliable and credible *in the past*" is sufficient to sustain a warrant through probable cause); *see also State v. Beam*, 325 N.C. 217, 381 S.E.2d 327 (1989) (discussing how a defendant's prior history of involvement with drugs and evidence from a controlled purchase involving defendant allowed for probable cause); *Arrington*, 311 N.C. 633, 319 S.E.2d 254 (affidavit allowed for probable cause where the officer personally knew one informant, a second informant acknowledged buying drugs from defendant, and both informants had previously provided information which had led to arrests); *State v. McLeod*, 36 N.C. App. 469, 244 S.E.2d 716 (1978) (information in the affidavit regarding an informant's controlled purchase of drugs from defendant was sufficient for probable cause); *Edwards*, 286 N.C. 162, 209 S.E.2d 758 (discussing how proof of an informant's firsthand knowledge of defendant's drug dealing, such as purchasing drugs from defendant or seeing defendant producing and selling drugs, is needed to show the informant's reliability). As the affidavit failed to provide sufficient information showing that the confidential informant was reliable, the trial court's findings of fact support its conclusions of law that the evidence was insufficient to establish probable cause.

The State also contends that the presence of gardening supplies outside of defendant's buildings and the utility report from Progress Energy provided sufficient probable cause for execution of a warrant. Citing *State v. O'Kelly*, 98 N.C. App. 265, 390 S.E.2d 717 (1990), the State argues that an informant's tip, considered in conjunction with an officer's

observations of suspicious equipment outside of defendant's home, permits a finding of probable cause for issuance of a warrant.

In *O'Kelly*, officers received information from the defendant's neighbor and an informant that the defendant was engaged in the manufacture and sale of methamphetamine. *Id.* at 267, 390 S.E.2d at 718. Officers obtained the defendant's criminal records which reflected prior convictions for methamphetamine manufacture, sale, and distribution. *Id.* Outdoor "open fields" observations of the defendant's property were also conducted during which officers noticed a strong chemical odor emanating from the property and saw equipment suspiciously placed around the residence. *Id.* at 267-68, 390 S.E.2d at 718. Our Court held that the trial court properly denied the defendant's motion to suppress evidence gathered under the search warrant, finding that under a "totality of the circumstances" test, the search warrant affidavit presented sufficiently corroborated and reliable information to establish probable cause. *Id.* at 270-71, 390 S.E.2d at 720-21.

*O'Kelly* is relevant to our present matter, as the search warrant affidavit stated that the officers had observed gardening supplies and a greenhouse in disrepair on defendant's property during an "open fields" observation of defendant's property. However, under *O'Kelly*'s "totality of the circumstances" test such observations of gardening supplies are insufficient by themselves to permit the issuance of a search warrant. Lt. Ferguson stated in the search warrant affidavit that he saw gardening supplies which were indicative of an indoor marijuana grow operation during his open fields observation of defendant's property. However, as defendant lived in a farming community and had a greenhouse, even though in disrepair, on his property, there is insufficient evidence simply based upon viewing used gardening supplies such as pots and bags of soil to conclude that a marijuana growing operation existed there. Unlike in *O'Kelly*, where officers noticed a strong chemical odor emanating from the property and saw oddly placed equipment next to the house during their open fields observation, here officers noticed a marijuana smell and saw thick mil plastic covering the building doors from the inside only after they had entered the property. As previously acknowledged by the State, this entry was illegal and thus the marijuana smell and plastic coverings could not be properly considered in seeking a search warrant.

Lt. Ferguson also appears to have relied upon Det. Hastings' review of the utility report from Progress Energy for the search warrant as there is no evidence to indicate that the magistrate was presented with a copy of the utility report or that Lt. Ferguson himself reviewed the utility report. In the suppression hearing, Det. Hastings testified that

the allegation that the utility report indicated an indoor marijuana growing operation was based solely on his own belief. Det. Hastings also acknowledged that the utility report was not compared to other utility reports for neighboring residences to show a discrepancy in defendant's power usage and an expert opinion was not provided as to how likely it was that the utility report indicated the presence of an indoor marijuana growing operation on defendant's property. As already noted, to establish probable cause for a search warrant, the requesting officer must demonstrate that the information contained in the affidavit in support of the search warrant is sufficiently reliable and not conclusory. The trial court, in its Conclusion of Law 5, determined that

> [i]t was only after illegally entering onto the Defendant's property and making observations while illegally on the premises that "thick mil plastic" was [observed] around some of the doors of the white outbuilding and there was a "strong smell of growing marijuana" emanating from the same outbuilding that Lieutenant Ferguson decided to seek to obtain a search warrant. *Clearly, Lieutenant Ferguson did not feel he had sufficient evidence gathered through the officers' prior personal observations to provide the requisite "indicia of reliability" to corroborate the confidential informant and the power usage records from Progress Energy to establish probable cause for the issuance of a lawful search warrant for the Defendant's premises* because he included their observations after illegally entering onto the Defendant's property in his sworn "Search Warrant Affidavit" for the search warrant which was submitted to and later issued by the magistrate on September 29, 2011 for a search of the Defendant's property in this case.

Based on the record before us, the trial court's findings of fact, both challenged and unchallenged, are supported by competent evidence. Likewise, the trial court's conclusions of law that the affidavit supporting the search warrant was not supported by probable cause is based on competent findings of fact.

We affirm the trial court's order granting defendant's motion to suppress.

Affirmed.

Judge STEELMAN concurs.

**STATE v. BENTERS**

[231 N.C. App. 295 (2013)]

HUNTER, Robert C., Judge, dissenting.

The majority concludes that the trial court was correct in granting defendant's motion to suppress evidence obtained from the search because the search warrant affidavit lacked sufficient "indicia of reliability" to establish probable cause. I agree that the affidavit did not contain a sufficient factual basis to establish probable cause under the confidential informant standard because the affiant did not detail why the source was reliable. However, I would find that under the anonymous tip standard, the affidavit contained detailed information provided by the source which was independently corroborated by experienced officers and therefore established probable cause for the search warrant's issuance. For the following reasons, I respectfully dissent.

This Court has traditionally used two standards to assess whether information provided by a third party may establish probable cause to support the issuance of a search warrant: the confidential informant standard and the anonymous tip standard. Under the confidential informant standard, a search warrant affidavit that states the affiant's belief that the confidential informant is reliable and contains some factual circumstance on which that belief is based is sufficient on its own to establish probable cause. *State v. Campbell*, 282 N.C. 125, 130-31, 191 S.E.2d 752, 756 (1972). However, "[p]robable cause cannot be shown by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based." *Id.* (internal quotation marks omitted). Under the anonymous tip standard, sufficient "indicia of reliability" to establish probable cause can be found if the source provided detailed information and that information was independently verified by the police. *State v. Lemonds*, 160 N.C. App. 172, 179-80, 584 S.E.2d 841, 846 (2003); *see also State v. Trapp*, 110 N.C. App. 584, 589-90, 430 S.E.2d 484, 488 (1993) (anonymous source's tip may provide probable cause if the details can be independently verified). This Court has adopted a "totality of the circumstances" approach in determining whether probable cause exists in support of the issuance of a search warrant. *State v. Edwards*, 185 N.C. App. 701, 704, 649 S.E.2d 646, 649 (2007).

I agree with the majority that the trial court correctly concluded that Lt. Ferguson's description of the source's reliability was merely conclusory, and therefore was insufficient to establish probable cause under the confidential informant standard. However, I believe the search warrant affidavit contained sufficient "indicia of reliability" for the

magistrate to find there was probable cause to issue the warrant under the anonymous tip standard.

In *Lemonds*, this Court applied the anonymous tip standard and held that there was probable cause where a source alleged that the defendant was growing marijuana, and evidence gathered by the police independently corroborated the tip. *Lemonds*, 160 N.C. App. at 179-80, 584 S.E.2d at 846. Prior to seeking a search warrant, the police discovered power bills for the defendant's residence that revealed electricity consumption patterns consistent with indoor marijuana-growing operations. *Id.* They also recovered equipment commonly used to grow marijuana from the defendant's garbage, saw the defendant put this equipment in the garbage, and found marijuana residue on the equipment. *Id.* The *Lemonds* Court concluded, "[b]ased on the totality of the circumstances . . . the information before the magistrate . . . provided a 'substantial basis' for finding probable cause that defendant was maintaining an indoor marijuana-growing operation." *Lemonds*, 160 N.C. App. at 180, 584 S.E.2d at 846.

I consider the facts as found by the trial court here analogous to those in *Lemonds*, and as such I believe there was sufficient evidence to establish probable cause for issuance of the search warrant under the anonymous tip standard. Here, the court made the following findings of fact. Det. Hastings and Lt. Ferguson began an investigation based on a source's tip that defendant was growing marijuana in an indoor operation on his farm. Det. Hastings had been employed by the Franklin County Sheriff's Department for approximately seven years at this time. Based on the source's information, Det. Hastings subpoenaed the power records for defendant's property. The records revealed excessive kilowatt usage, which Det. Hastings concluded was indicative of a marijuana-growing operation based on his extensive experience as a narcotics officer. The officers then went to a lot adjacent to defendant's property to conduct surveillance based on the source's tip and the power records. Before committing the illegal "knock and talk" entry onto defendant's property, the officers identified a plethora of physical evidence indicating a growing operation, including potting soil, starting fertilizer, seed starting trays, plastic cups, metal storage racks, and pump sprayers. No fields were in cultivation at the time the officers identified these materials, and the greenhouse on the property appeared to be in disrepair based on tears in the exterior and knee-deep weeds surrounding it.

All of this information found as fact by the trial court was included in the affidavit before the magistrate. The affidavit also contained the statement by Lt. Ferguson that, based on his experience and training as

a narcotics officer, the physical evidence identified on defendant's property was indicative of an indoor marijuana-growing operation. I would find that the source's tip that defendant was growing marijuana in an indoor facility on his farm was independently verified by experienced officers through their analysis of defendant's power records and observation of physical evidence indicative of a marijuana-growing operation that necessarily must have been occurring indoors, as the source indicated. As such, based on the anonymous tip standard and the precedent set in *Lemonds*, I would find that there was a substantial basis to establish probable cause for the issuance of the warrant here.

I conclude that the combination of the officers' years of training, knowledge, and experience regarding narcotic and drug enforcement, as well as the independently verified utility records and personal observations of cultivation equipment at defendant's farm, sufficiently corroborated the source's tip and established probable cause to believe that there would be drugs and related paraphernalia at defendant's address under an anonymous tip standard. *See State v. Bone*, 354 N.C. 1, 10, 550 S.E.2d 482, 488 (2001) (holding that an officer may rely upon information received through a source "so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge") (citation omitted), *cert. denied*, 535 U.S. 940, 152 L. Ed. 2d 231 (2002); *see also Edwards*, 185 N.C. App. at 705, 649 S.E.2d at 650 (holding that the affiant officer's extensive experience weighed in favor of finding the magistrate had a substantial basis to conclude probable cause existed to issue a search warrant). Thus, under the totality of the circumstances, the search warrant affidavit provided to the magistrate set forth sufficient facts for a reasonably discreet and prudent person to rely upon in determining that probable cause existed in support of the issuance of the search warrant. *See Edwards*, 185 N.C. App. at 704, 649 S.E.2d at 649 ("To establish probable cause, an affidavit for a search warrant must set forth such facts that a reasonably discreet and prudent person would rely upon[.]") (citation and internal quotation marks omitted). Accordingly, I would find the trial court erred in granting defendant's motion to suppress evidence, and I would reverse the trial court's order.