STROUD, Judge.
 

 *275
 
 Defendant appeals order denying his motion to suppress and judgment for drug-related convictions. The trial court properly denied defendant's motion to suppress and had jurisdiction to correct defendant's sentence since defendant's defective notice of appeal did not divest the trial court of jurisdiction. But as the State concedes, the trial court erred by not giving defendant an opportunity to withdraw his plea upon resentencing him. As explained in more detail below, we therefore affirm the order denying the motion to suppress but reverse the judgment and remand.
 

 I. Background
 

 On or about 18 March 2013, defendant was indicted for maintaining a dwelling for keeping or selling marijuana and two counts of trafficking in marijuana. In March of 2014, defendant filed a motion to suppress "any and all evidence" seized from his home, alleging that the officers did not establish probable cause for the search warrant which authorized the search of his home. On 4 September 2015, the trial court denied
 
 *276
 
 defendant's motion to suppress and made the following findings of fact which are not contested on appeal:
 

 1. On or about January 1, 2013, Officer C.S. Bradshaw of the Greensboro Police Department received information from a confidential source, that defendant was growing and selling marijuana.
 

 2. In the application for the search warrant received in evidence as State's Exhibit 1, Officer Bradshaw, noting that the confidential informant was reliable, set out further specific information provided by the confidential informant, including the following: (a) that defendant was growing and selling marijuana from his residence ... (b) that there was a large grow operation in the home, and (c) that there were generators running the lights. Officer Bradshaw further stated that the confidential informant was familiar with the appearance of illegal narcotics and that all previous information from the confidential informant had proven to be truthful and accurate to the best of Officer Bradshaw's knowledge.
 

 ....
 

 11. Officers Bradshaw, Trimnal and Armstrong then decided to perform a "knock and talk" procedure to make inquiry further at the residence.
 

 12. Officer Bradshaw testified that he had substantial experience in investigating narcotics matters, had made numerous arrests specifically related to marijuana, and had received specific training as to narcotics and the indications of marijuana growing activity such as mold and condensation, resulting from humidity, on the windows of marijuana "grow houses."
 

 ....
 

 14. As Officer Bradshaw approached the house on the walkway to the front door, Officer Bradshaw noticed, in plain view to the right of the doorway, windows on the front right of the home that had substantial mold and condensation, as seen in State's Exhibits 3 and 4. In Officer Bradshaw's training and experience, this
 
 *277
 
 was consistent with the heat and humidity associated with marijuana growing operations.
 

 15. When Officer Bradshaw reached the front porch, he also heard, from the
 
 *382
 
 front porch, a loud sound consistent with an electrical generator running inside the home, which was also consistent with the information provided by the confidential informant.
 

 ....
 

 19. When Officer Trimnal approached the left side door and knocked, he smelled the odor of marijuana, and Officer Bradshaw also came over to the left side door, and he also smelled the odor of marijuana plainly and from outside the left side door of the home.
 

 ....
 

 21. Officers Bradshaw and Armstrong then sought the Warrant[.]
 

 On 3 November 2015, defendant filed a written notice of appeal from the order denying his motion to suppress. On 10 November 2015, defendant pled guilty pursuant to an
 
 Alford
 
 plea to all of the charges against him, and the trial court entered judgment sentencing defendant to 25 to 30 months imprisonment. After receiving notification from the North Carolina Department of Public Safety that defendant's minimum and maximum terms of imprisonment as set forth in the judgment were incorrect, on 12 February 2016, the trial court entered another judgment sentencing defendant instead to 25 to 39 months imprisonment. In May of 2016, based upon his recognition of a defect in his notice of appeal, defendant filed a petition for writ of certiorari before this Court.
 

 II. Petition for Writ of Certiorari
 

 According to defendant's petition "he lost the right of appeal by failing to give proper notice of appeal, and on the further ground that in Issue III of his brief, he seeks to challenge the procedures employed in his plea hearing, for which there is no right of appeal." The trial court rendered its decision to deny defendant's motion to suppress, and thereafter defendant entered into a plea agreement. On the same day as defendant's sentencing hearing and
 
 before
 
 judgment was entered, defendant's attorney filed a notice of appeal from the order denying defendant's motion to suppress. Thereafter, defendant did not file a timely appeal from the order denying his motion to suppress, and in
 
 *278
 
 fact, even his oral notice to appeal given immediately after judgment was rendered appears to give notice of appeal only of the denial of his motion to suppress and not the actual judgment sentencing him.
 

 A few months later, the trial court resentenced defendant to correct a prior error; this correction resulted in defendant's maximum sentence increasing by nine months although his minimum sentence remained the same. Defendant did not appeal the resentencing judgment but has since filed this petition for certiorari. The State "concede[s] that it was error for the trial court, at the new sentencing hearing[,] ... not to allow defendant an opportunity to withdraw his plea where the sentence was greater than what he agreed to in his plea agreement[,]" and thus it would be appropriate for this Court to consider defendant's appeal.
 

 Pursuant to North Carolina Rule of Appellate Procedure 21, we allow defendant's petition for certiorari.
 
 See
 

 State v. Biddix
 
 , --- N.C. App. ----, ----,
 
 780 S.E.2d 863
 
 , 866 (2015) (" N.C. Gen. Stat. § 15A-1444(e) states a defendant who enters a guilty plea may seek appellate review by certiorari, Appellate Rule 21(a)(1) is entitled Certiorari, and provides the procedural basis to grant petitions for writ of certiorari under the following situations: (1) when the right to prosecute an appeal has been lost by failure to take timely action[.]" (citation and quotation marks omitted)). Furthermore, to the extent defendant's appeal invokes challenges to his guilty plea not normally appealable, we invoke Rule 2 of the Rules of Appellate Procedure in order "to prevent manifest injustice" as this is a rare situation where
 
 both parties
 
 concede the trial court erred in sentencing defendant. N.C.R. App. P. 2 ;
 
 see
 

 Biddix
 
 , --- N.C. App. at ----,
 
 780 S.E.2d at 868
 
 ("Under Appellate Rule 2, this Court has discretion to suspend the appellate rules either upon application of a party or upon its own initiative. Appellate Rule 2 relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest, or to prevent injustice which appears manifest to the Court and only in such instances. This Court's discretionary exercise to invoke Appellate
 
 *383
 
 Rule 2 is intended to be limited to occasions in which a fundamental purpose of the appellate rules is at stake, which will necessarily be rare occasions." (citations and quotation marks omitted)). We thus turn to defendant's issues on appeal.
 

 III. Motion to Suppress
 

 Defendant first challenges the denial of his motion to suppress on two separate grounds: (1) the "knock and talk" was a mere "guise" which allowed officers to surround his home and far exceeded the scope of a proper "knock and talk" and (2) the search warrant was deficient because it was based on an unsubstantiated anonymous tip.
 

 *279
 
 The standard of review for a trial court's order denying a motion to suppress is whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law. If a defendant does not challenge a particular finding of fact, such findings are presumed to be supported by competent evidence and are binding on appeal. The trial court's conclusions of law, however, are fully reviewable on appeal.
 

 State v. Medina
 
 ,
 
 205 N.C.App. 683
 
 , 685,
 
 697 S.E.2d 401
 
 , 403 (2010) (citations and quotation marks omitted).
 

 A. Knock and Talk
 

 Defendant does not challenge any of the findings of fact regarding the knock and talk but only the conclusions of law determining the knock and talk was lawful. We first note that we will refer to the officers' approach to defendant's home as a "knock and talk," since that is the term used by defendant and in cases, although we also note that there was no "talk" in this case since no one answered the door after the officers knocked. The only evidence from the knock and talk was from the officers' observations from the exterior of the home of the conditions of the windows and hearing the sound of the generator. This was really a knock, look, and listen.
 

 Yet defendant raises an interesting legal question not directly addressed by either party, since most knock and talk cases deal with
 
 warrantless
 
 searches.
 
 See, e.g.
 
 ,
 
 State v. Smith
 
 ,
 
 346 N.C. 794
 
 , 800,
 
 488 S.E.2d 210
 
 , 214 (1997) ("Knock and talk is a procedure utilized by law enforcement officers to obtain a consent to search when they lack the probable cause necessary to obtain a search warrant. That officers approach a residence with the intent to obtain consent to conduct a warrantless search and seize contraband does not taint the consent or render the procedure per se violative of the Fourth Amendment." (citation and quotation marks omitted));
 
 State v. Marrero
 
 , --- N.C. App. ----, ----,
 
 789 S.E.2d 560
 
 , 564 (2016) ("A knock and talk is a procedure by which police officers approach a residence and knock on the door to question the occupant, often in an attempt to gain consent to search when no probable cause exists to obtain a warrant." (quotation marks omitted));
 
 State v. Dulin
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 803
 
 , 810 (2016) ("In
 
 Grice
 
 , police officers who approached the door of the defendant's home for a knock and talk noticed some plants growing in containers
 
 *280
 
 in an unfenced area about fifteen yards from the residence. The officers recognized the plants as marijuana, seized them, and later arrested the defendant. The defendant argued that evidence of the plants should have been suppressed because the officers' warrantless search and seizure of the plants violated the Fourth Amendment, as the plants were within the curtilage of his home and thus were protected." (citation and quotation marks omitted)). In this case, based upon all of the information the officers already had, including the informant's tip, the further investigation which supported the tip, and the conditions which the officers observed outside the home, the officers then obtained a search warrant before going inside the home and ultimately seizing any of the property which defendant attempts to suppress in his motion.
 

 Defendant's brief makes much of the "coercive" nature of the officers' approach to the home, since three officers simultaneously approached his front and side door. But again, this was a knock, look, and listen; there was no talking. Since defendant was not home at the time and no one else was in
 
 *384
 
 the home, as far as the record shows, we do not know who could have been coerced. Defendant further contends that "[n]o North Carolina appellate decision has analyzed, let alone approved practice whereby officers simultaneously go to multiple doors and surround the front of a home[.]" In one case, this Court did discuss that it was problematic in that particular situation for officers to go to the defendant's back door but did not address any issue regarding officers approaching front and side doors for a knock and talk.
 
 See generally
 

 State v. Pasour
 
 ,
 
 223 N.C.App. 175
 
 ,
 
 741 S.E.2d 323
 
 (2012) (stating as the general facts that officers approached the front and side doors and only addressing the unlawful approach to the back door). However, even assuming
 
 arguendo
 
 that any information gained from the approach of the side door was unlawfully obtained and therefore should be suppressed, the fact remains that Officer Bradshaw lawfully approached from the front of the home where he heard the generator and noticed condensation and mold, all factors which in his experience and training were consistent with conditions of a home set up to grow marijuana.
 

 When the officers approached defendant's home, they were in the process of seeking additional information to substantiate the claims of the confidential informant. The investigation started with the tip from the informant; then Officer Bradshaw did further investigation which fully supported the informant's claims. Only then did the officers approach defendant's home to do the knock and talk, and even approaching from the front door of the home, Officer Bradshaw was
 
 *281
 
 able to observe conditions at the home which further substantiated the informant's tip. It is well established that an officer may approach the front door of a home,
 
 see, e.g.,
 

 State v. Smith
 
 , --- N.C. App. ----, ----,
 
 783 S.E.2d 504
 
 , 509 (2016) ("[I]n North Carolina, law enforcement officers may approach a front door to conduct 'knock and talk' investigations that do not rise to the level of a Fourth Amendment search."
 
 See
 

 State v. Tripp
 
 ,
 
 52 N.C.App. 244
 
 , 249,
 
 278 S.E.2d 592
 
 , 596 (1981) ("Law enforcement officers have the right to approach a person's residence to inquire as to whether the person is willing to answer questions.") (internal citations omitted);
 
 see also
 

 State v. Church
 
 ,
 
 110 N.C.App. 569
 
 , 573-74,
 
 430 S.E.2d 462
 
 , 465 (1993) ("[W]hen officers enter private property for the purpose of a general inquiry or interview, their presence is proper and lawful.... '[O]fficers are entitled to go to a door to inquire about a matter; they are not trespassers under these circumstances.' ")), and if he is able to observe conditions from that position which indicate illegal activity, it is completely proper for him to act upon that information.
 

 Ultimately, the officers did get a search warrant for the search which led to the seizure of defendant's contraband. Thus, the real issue is not the knock and talk, but whether there was probable cause to issue the search warrant. Defendant's challenge to the knock and talk is actually a challenge of the search warrant since information from the knock and talk is part of the factual basis for the issuance of the warrant. But the officers' observations at the house were only a small part of the information upon which the warrant was issued. Thus, we turn to defendant's next challenge, the confidential informant.
 

 B. Confidential Informant
 

 Defendant contends that the search warrant was improperly issued because the confidential informant was not sufficiently reliable to form the basis of probable cause.
 

 In determining whether probable cause exists for the issuance of a search warrant, our Supreme Court has provided that the totality of the circumstances test is to be applied. Under the totality of the circumstances test,
 

 the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be
 
 *282
 
 found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.
 

 *385
 

 State v. Benters
 
 ,
 
 231 N.C.App. 295
 
 , 300,
 
 750 S.E.2d 584
 
 , 588 (2013) (citations, quotation marks, ellipses, and brackets omitted),
 
 aff'd
 
 ,
 
 367 N.C. 660
 
 ,
 
 766 S.E.2d 593
 
 (2014). In
 
 State v. McKoy
 
 , this Court explained that
 

 [t]his court has already established the irreducible minimum circumstances that must be set forth in support of an informant's reliability to sustain a warrant. In
 
 Altman
 
 , the affiant's statement that the confidential informant has proven reliable and credible in the past was held to meet the minimum standards to sustain a warrant. In the present case, the affiant's statement that the confidential informant had given this agent good and reliable information in the past that had been checked by the affiant and found to be true also meets this minimum standard.
 

 16 N.C.App. 349
 
 , 351-52,
 
 191 S.E.2d 897
 
 , 899 (1972) (citation, quotation marks, and ellipses omitted).
 

 Here, the trial court found that the search warrant stated the
 

 confidential informant was reliable, [and] set out further specific information provided by the confidential informant, including the following: (a) that defendant was growing and selling marijuana from his residence ... (b) that there was a large grow operation in the home, and (c) that there were generators running the lights. Officer Bradshaw further stated that the confidential informant was familiar with the appearance of illegal narcotics and that all previous information from the confidential informant had proven to be truthful and accurate to the best of Officer Bradshaw's knowledge.
 

 In context, describing the informant as "reliable" is a succinct way of saying that the officer was familiar with the informant and the informant had provided accurate information in the past. In addition, the warrant affidavit stated, "All previous information provided by [the confidential informant] has proven truthful and accurate to the best of [Officer Bradshaw's] knowledge." We conclude that Officer Bradshaw's statement in the affidavit attached to the warrant regarding prior truthful statements provided by the confidential informant meets "the irreducible
 
 *283
 
 minimum circumstances that must be set forth in support of an informant's reliability to sustain a warrant."
 
 Id.
 
 at 351-52,
 
 191 S.E.2d at 899
 
 .
 

 While defendant argues the confidential informant here should be viewed as anonymous, the record does not support this claim. Indeed, as we just noted, the warrant application supports the exact opposite conclusion. Officer Bradshaw had to know who the informant was to be aware of the informant's prior reliability. This was not an anonymous tip from an unknown person. Defendant's brief dwells upon various types of additional information that might have been provided to show the reliability of the informant; we agree that additional information would not be harmful or inappropriate, but it is also unnecessary.
 
 See generally
 

 id.
 
 at 351-52,
 
 191 S.E.2d at 899
 
 . The search warrant stated that Officer Bradshaw had previously used information from the confidential informant and found it to be reliable. Officer Bradshaw then did additional investigation, all of which supported the informant's claims and established probable cause for issuance of the search warrant.
 
 See
 
 id.
 

 As a valid search warrant was issued, defendant's motion to suppress was properly denied. This argument is overruled.
 

 IV. Resentencing
 

 Defendant's next two challenges address the trial court's resentencing after notification of an error in the range of his sentence from the North Carolina Department of Public Safety. Defendant first contends that the trial court was divested of jurisdiction because he had already appealed from the judgment. But defendant cannot have it both ways. Defendant has already conceded that his notice of appeal was defective, and thus jurisdiction was not with this Court, but rather still with the trial court.
 
 See generally
 

 State v. Miller
 
 ,
 
 205 N.C.App. 724
 
 ,
 
 696 S.E.2d 542
 
 (2010) (determining that jurisdiction does not switch to this Court when a notice of appeal is defective). As discussed above, we granted review by certiorari to defendant for this very reason.
 

 Lastly, defendant contends that it was error for the trial court to resentence
 
 *386
 
 him to a sentence greater than that provided for in his plea agreement without giving him the opportunity to withdraw his plea; the State agrees with defendant. North Carolina General Statute § 15A-1024 provides that
 

 [i]f at the time of sentencing, the judge for any reason determines to impose a sentence other than provided for in a plea arrangement between the parties, the judge
 
 must
 
 inform the defendant of that fact and inform the defendant that he may withdraw his plea. Upon withdrawal, the
 
 *284
 
 defendant is entitled to a continuance until the next session of court.
 

 N.C. Gen. Stat. § 15A-1024 (2013) (emphasis added). Since the trial court should have given defendant the opportunity to withdraw his plea in accordance with North Carolina General Statute § 15A-1024, we reverse and remand.
 
 See
 

 State v. Oakley
 
 ,
 
 75 N.C.App. 99
 
 , 104,
 
 330 S.E.2d 59
 
 , 63 (1985) ("On remand, the defendant may withdraw his guilty plea at the resentencing hearing, if the judge decides to impose a sentence other than the original plea arrangement, N.C. Gen. Stat. Sec. 15A-1024 (1983), or he may seek to negotiate new terms and conditions under his original plea to the lesser included offense. Reversed in part and remanded for reinstatement of guilty plea and resentencing.").
 

 V. Conclusion
 

 For the foregoing reasons, we affirm the trial court's denial of defendant's motion to suppress, reverse defendant's judgment, and remand so that the trial court may afford defendant the opportunity to withdraw his plea before any new longer sentence may be imposed.
 

 Affirmed in part; reversed in part; and remanded.
 

 Judges MCCULLOUGH and ZACHARY concur.