STATE OF NORTH CAROLINA v. TIMOTHY BERNARD ALLISON

No. COA01-306

(Filed 19 February 2002)

## 1. Search and Seizure— stop and frisk—reasonable suspicion—tip

A tip to an officer exhibited the "moderate indicia of reliability" needed for the reasonable suspicion necessary to justify an investigatory stop and frisk where the tip came through a face-to-face encounter with an officer rather than by an anonymous telephone call; the informant provided the officer with a reasonable explanation as to how she was aware that criminal activity might take place; and the officer independently corroborated the tip prior to his investigatory stop of defendant.

## 2. Search and Seizure— stop and frisk—scope—suspicion for continuation

An officer was justified in continuing his frisk of defendant after defendant said that he was not carrying weapons and the initial frisk revealed nothing where the officer had received information that defendant's group had been passing a weapon around, the officer had identified defendant as having been involved in prior gun-related incidents, and the officer had observed defendant holding his pants up as though something was dragging them down.

Appeal by defendant from judgment entered 30 November 2000 by Judge Kimberly S. Taylor in Cleveland County Superior Court. Heard in the Court of Appeals 23 January 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General Douglas A. Johnston, for the State.*

*Teddy & Meekins, P.L.L.C., by David R. Teddy, for defendant-appellant.*

**STATE v. ALLISON**

[148 N.C. App. 702 (2002)]

WALKER, Judge.

Defendant appeals the trial court's order denying his motion to suppress evidence which was seized during a search of his person. Following the denial of his motion, defendant entered a conditional plea of guilty to carrying a concealed weapon for which he received a sentence of six to eight months. However, the trial court suspended the sentence and placed defendant on supervised probation for twenty-four months.

The trial court's findings with respect to defendant's motion to suppress may be summarized as follows: On 20 June 1999, Officers Jamie Ledford and Richard Ivey of the Shelby Police Department were investigating a call at a local convenience store when they were approached by two women. One of the women told Officer Ledford that about five minutes earlier she had been in a nearby restaurant where she observed four African American males sitting in the bar area. She related that she overheard them talking about robbing the restaurant and that she had seen the four men passing a black hand-gun amongst themselves. At Officer Ledford's request, the woman repeated her observations to Officer Ivey. Officer Ivey then obtained a telephone number from the woman, which he wrote on the back of his hand.

Based on this information, the officers contacted their supervisor who advised them that he and another officer would meet them out-side the restaurant. When they all arrived, Officer Ivey entered the restaurant and observed four African American males sitting in the bar area. He identified defendant as having been involved in previous gun-related incidents. He then approached the men and asked them to step out into the restaurant's foyer. Officer Ivey testified that when defendant stood, he was "holding his pants up as though he had something dragging his pants down."

In the foyer, Officer Ivey began conducting a pat-down frisk of defendant and asked him whether he was carrying any weapons. After defendant responded "no," Officer Ivey continued frisking him and seized a nine millimeter handgun from his front waistband. Defendant was then arrested and charged with carrying a concealed weapon. Sometime thereafter, Officer Ivey called the telephone num-ber he had written on the back of his hand but did not get an answer.

In his sole assignment of error, defendant contends the trial court erred in denying his motion to suppress the nine millimeter handgun

seized from his person. Specifically, he offers two alternative arguments: (1) that Officer Ivey did not have a reasonable articulable suspicion so as to justify an investigatory stop of defendant, and (2) assuming the existence of a reasonable articulable suspicion, the patdown frisk exceeded its permissible scope.

[1] Our review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether it's findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Here, defendant does not dispute that the trial court's findings are sufficiently supported by competent evidence. Rather, he contends the findings do not support the trial court's conclusion that Officer Ivey had a reasonable suspicion of criminal activity thereby justifying a stop and frisk of defendant.

Defendant relies primarily on *Florida v. J.L.*, 529 U.S. 266, 146 L. Ed. 2d 254 (2000), in which the United States Supreme Court held that an anonymous telephone call reporting that a person is carrying a gun is insufficient to justify a police officer's investigatory stop and frisk of that person. In *J.L.*, an anonymous caller reported to police that a young African American male, dressed in a plaid shirt, was standing at a particular bus stop and was carrying a handgun. Two officers were sent to the bus stop where they observed three African American males, one of whom was wearing a plaid shirt. An officer frisked this man and seized a handgun from his pocket. The Court, relying on its Fourth Amendment precedent, found the anonymous tip alone lacked a "moderate indicia of reliability" to provide the officer with the reasonable suspicion necessary to justify an investigatory stop. *Id.* at 271, 146 L. Ed. 2d at 260; *see also Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301 (1990); *and Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). However, the Court also recognized that had the circumstances surrounding the tip been such that its assertion of criminal activity was more reliable or if the tip had been suitably corroborated by the police, an investigatory stop would have been justified. *Id.* at 272, 146 L. Ed. 2d at 260-61.

Our Supreme Court has recently applied *J.L.'s* holding to an anonymous tip which led to an investigatory stop of an automobile. *See State v. Hughes*, 353 N.C. 200, 539 S.E.2d 625 (2000). In *Hughes*, a telephone caller reported to Jacksonville police that a man would be arriving there by bus that day with cocaine and marijuana in his

possession. The caller provided a detailed description of the man, indicated that he occasionally carried an overnight bag, and stated that at times he took a taxi from the bus station to North Topsail Beach. Based on this information, officers staked out the bus station. After some time, they observed a man matching the description and carrying an overnight bag step into a taxi. They followed the taxi but stopped it before they could definitively determine whether it was headed towards North Topsail Beach. Upon searching the defendant, the officers found marijuana and cocaine in his shoes. *Citing J.L.*, the Court held the search to be unlawful as the circumstances surrounding the tip were insufficient to create a reasonable suspicion and the police had failed to independently corroborate the tip. *Id. at* 201-03, 209-10, 539 S.E.2d at 627-28, 631-32.

After a careful review of the facts in this case, we find Officer Ivey's investigatory stop of defendant is notably distinguishable from the ones which occurred in *J.L.* and *Hughes*. Foremost, the tip in this case came through a "face-to-face" encounter rather than by an anonymous telephone call. Under this scenario, Officer Ivey had an opportunity to observe the demeanor of the female informant in an effort to assess the reliability of her tip. Furthermore, by engaging Officer Ivey directly, the female informant significantly increased the likelihood that she would be held accountable if her tip proved to be false. *See generally State v. Sanchez*, 147 N.C. App. 619, 556 S.E.2d 602 (No. COA00-1075 filed 18 December 2001).

We note as well that, unlike the informants in *J.L.* and *Hughes*, the female informant here provided Officer Ivey with a reasonable explanation as to how she was aware that criminal activity was possibly going to take place. She stated that she had just recently come from the restaurant, had overheard the men discussing plans to rob it, and had observed them passing around a handgun.

Moreover, our review of the record reveals Officer Ivey independently corroborated the tip prior to his investigatory stop of defendant. As he entered the bar area, he recognized defendant and recalled that he had previously been involved in gun-related incidents. Thus, his knowledge of defendant's reputation served to buttress the tip he received. *See J.L.*, 529 U.S. at 270, 146 L. Ed. 2d at 260 ("there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop' ") (*quoting White*, 496 U.S. at 327, 110 L. Ed. 2d at 306); *see also Hughes*, 353 N.C. at 207, 539 S.E.2d at 630;

and *State v. Young*, 148 N.C. App. 462, 467, 559 S.E.2d 814, 818-19 (2002). Accordingly, we conclude the tip furnished to Officer Ivey exhibited the "moderate indicia of reliability" so as to furnish him with the reasonable suspicion necessary to justify an investigatory stop and frisk of defendant.

[2] Defendant also argues that even if the investigatory stop were lawful, Officer Ivey's search exceeded its permissible scope. He contends that once Officer Ivey had begun to frisk him and found nothing, he should have been permitted to leave once he informed the officer that he was not carrying a handgun. We disagree.

"[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or *dispel the officer's suspicion* in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238 (1983) (citations omitted) (emphasis added). Here, Officer Ivey frisked defendant based on the information he had received, which was reinforced by his prior knowledge of defendant. Additionally, he had observed defendant leave the bar area "holding his pants up as though he had something dragging his pants down." Based on these facts, we find that Officer Ivey's suspicion that defendant had a weapon hidden on his person had not been sufficiently dispelled when his initial frisk failed to uncover a weapon. *Accord State v. Watson*, 119 N.C. App. 395, 399, 458 S.E.2d 519, 523 (1995). Therefore, we conclude he was justified in his continued frisk of defendant and the subsequent seizure of the handgun from his waistband. The trial court's order denying defendant's motion to suppress this evidence is affirmed.

Affirmed.

Judges McGEE and BIGGS concur.