STATE OF NORTH CAROLINA v. MARY ALMA ALLEN

No. COA08-773

(Filed 19 May 2009)

**1. Search and Seizure— investigatory stop—reasonable articulable suspicion—information from assault victim**

The trial court did not err by concluding, under the totality of the circumstances, that a stop which led to a guilty plea of habitual impaired driving was based on a reasonable articulable suspicion where the victim of an assault gave information to an officer about the suspect and the car in which he left the scene, the officer drove around the vicinity until he saw a similar car and driver, and the officer stopped the car and determined that defendant was not involved in the assault, but arrested her for impaired driving.

**2. Search and Seizure— investigatory stop—reasonable**

A simple investigatory stop that led to an habitual impaired driving conviction was reasonable under all of the circumstances where an assault victim had given an officer a description of a car containing her assailant and a driver, and the officer stopped defendant even though there were some differences from the description the assault victim had given.

STATE v. ALLEN

[197 N.C. App. 208 (2009)]

Appeal by defendant from judgment entered 25 March 2008 by Judge W. Osmond Smith, III in Person County Superior Court. Heard in the Court of Appeals 14 January 2009.

*Attorney General Roy Cooper, by Assistant Attorney General John W. Congleton, for the State.*

*Amos Granger Tyndall, P.A., by Amos Granger Tyndall, for defendant-appellant.*

CALABRIA, Judge.

Mary Alma Allen ("defendant") appeals a judgment entered on a guilty plea of habitual impaired driving. We affirm.

At approximately 3:30 a.m., on 17 December 2006, the local emergency dispatcher received a call that there had been an assault at the Budget Inn on North Madison Boulevard in Roxboro. Sergeant Kenneth J. Horton ("Sgt. Horton") of the Roxboro Police Department responded to the call. The victim of the assault told officers the suspect was a tall white male who left in a small dark car driven by a white female with blonde hair. For approximately ten minutes, Sgt. Horton drove around the vicinity of North Madison Boulevard looking for a small dark vehicle operated by a white female with blonde hair. Sgt. Horton observed a small, light-colored vehicle traveling southbound on Madison, away from the direction of the Budget Inn. Defendant, a white female with blonde hair, was driving the vehicle.

Sgt. Horton observed the defendant enter the center turn-lane and make an abrupt left turn into a parking lot. The pavement in the parking lot was uneven. Sgt. Horton observed the defendant driving hastily over the rough pavement. Sgt. Horton drove over to the area where the defendant had parked her car. The defendant was outside the vehicle. No one was behind the steering wheel. Sgt. Horton observed a person in the passenger seat but could not determine whether the passenger was male or female. Sgt. Horton exited his vehicle and asked the defendant to come to his vehicle to ask her questions regarding the altercation at the Budget Inn. When Sgt. Horton parked and exited his vehicle, he noticed defendant was leaning against the car and appeared to be intoxicated. Sgt. Horton questioned her about the assault incident and determined she was not involved in the assault.

Sgt. Horton arrested defendant for driving while impaired. On 8 October 2007, defendant was indicted for habitual impaired driving

because she was previously convicted of three or more offenses involving impaired driving.

Defendant moved to suppress all the evidence in support of her charge on the basis that the officer did not have reasonable suspicion to stop her. After hearing evidence, the trial court denied her motion. Defendant entered a guilty plea of habitual driving while impaired and was sentenced to a minimum of twelve months to a maximum of fifteen months in the North Carolina Department of Correction. As a condition of her guilty plea, defendant reserved her right to appeal the order denying her motion to suppress.

## I. Standard of Review

"[T]he standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (internal quotations omitted). The trial court's conclusions of law are subject to *de novo* review. *State v. Campbell*, 188 N.C. App. 701, 704, 656 S.E.2d 721, 724 (2008) (citing *State v. Pickard*, 178 N.C. App. 330, 334, 631 S.E.2d 203, 206 (2006)).

## II. Analysis

[1] Defendant's sole argument on appeal is that the seizure was unreasonable because it was based on an uncorroborated anonymous tip which lacked a sufficient indicia of reliability. We disagree.

The trial court concluded that "Sgt. Horton's directive to the defendant to come to his vehicle for his further investigation was a seizure of the defendant[.]" Defendant assigned error to the portion of the trial court's conclusion of law

> that [the seizure] was Constitutionally valid, pursuant to his reasonable and articulable suspicion that the defendant had been involved in recent criminal activity related to the subject fight/assault, including transporting an offender suspect away from the scene of a criminal fight/assault which justified detention for additional investigation. The detention of the defendant for such valid purposes was reasonable in scope and manner and not an unreasonable seizure of the defendant or intrusion upon her liberties to the extent of questioning her regarding the altercation at the Budget Inn. Such lawful and permissible action by Sgt. Horton led to further suspicion of violation by the defendant

of the motor vehicle statutes, for driving while impaired. Such observations then justified further detention and investigation related to a suspicion of driving while impaired.

"The police can stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity may be afoot even if they lack probable cause." *State v. Hudgins*, 195 N.C. App. 430, 433, 672 S.E.2d 717, 719 (2009) (internal quotation marks and brackets omitted) (quoting *United States v. Sokolow*, 490 U.S. 1, 2, 109 S.Ct. 1581, 104 L. Ed. 2d 1, 6 (1989)).

Only unreasonable investigatory stops are unconstitutional. An investigatory stop must be justified by a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.

A court must consider the totality of the circumstances—the whole picture—in determining whether a reasonable suspicion to make an investigatory stop exists. The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an unparticularized suspicion or hunch.

*State v. Campbell*, 359 N.C. 644, 664, 617 S.E.2d 1, 14 (2005) (internal citations and quotations omitted). "When police act on the basis of an informant's tip, the indicia of the tip's reliability are certainly among the circumstances that must be considered in determining whether reasonable suspicion exists." *State v. Maready*, 362 N.C. 614, 619, 669 S.E.2d 564, 567 (2008). "Where the informant is known or where the informant relays information to an officer face-to-face, an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion." *Hudgins*, 195 N.C. App. at 434, 672 S.E.2d at 719 (citations omitted). "An anonymous tip may provide reasonable suspicion [for an investigatory stop] if it exhibits sufficient indicia of reliability and if it does not, then there must be sufficient police corroboration of the tip before the stop can be made." *State v. McArn*, 159 N.C. App. 209, 213, 582 S.E.2d 371, 374 (2003) (citation omitted). The "overarching inquiry when assessing reasonable suspicion is always based on the *totality* of the circumstances." *Maready*, 362 N.C. at 619, 669

S.E.2d at 567 (citing *State v. Barnard*, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (2008)).

Defendant cites *State v. Hughes*, 353 N.C. 200, 539 S.E.2d 625 (2000) in support of her argument. In *Hughes*, the Supreme Court reversed the denial of defendant's motion to suppress evidence seized from detaining a defendant. In that case, Detective Imhoff of the Jacksonville Police Department received a call from Captain Matthews of the Onslow County Sheriff's Department. *Id.* at 201-02, 539 S.E.2d at 627. Matthews told Imhoff he spoke with a "confidential reliable" informant who after describing the defendant, told him the defendant would be arriving in Jacksonville from New York City, possibly by bus, and would be carrying marijuana and cocaine. *Id.* Detective Imhoff relayed the information to Detective Bryan and told him to go to the bus station. The officers observed defendant leave the bus station and enter a taxi. Before the officers determined which direction defendant was headed in, the officers detained the taxi. *Id.* at 202, 539 S.E.2d at 627-28. The arresting officers also testified they did not directly speak to the informant, nor were they able to testify why this informant was credible or reliable. *Id.* at 204, 539 S.E.2d at 628. The Court determined the anonymous tip lacked the requisite indicia of reliability and was not corroborated by the officers' observations. *Id.* at 210, 539 S.E.2d at 632.

In *State v. Allison*, 148 N.C. App. 702, 559 S.E.2d 828 (2002), this Court affirmed denial of defendant's motion to suppress evidence where an officer detained defendant based on a tip from an eyewitness. A woman in a restaurant observed four African American males sitting near the bar area. She overheard them talking about robbing the restaurant and saw them pass a handgun amongst themselves. The woman reported her observations to Officer Ledford who asked her to report them to Officer Ivey. After writing down the woman's phone number and checking with his supervisor, Officer Ivey entered the restaurant, observed four African American men sitting at the bar area and noticed one of the men had been involved in a prior gun-related incident. When Officer Ivey asked the men to step out into the restaurant foyer, he noticed defendant held his pants up as if he had something dragging his pants down. Officer Ivey conducted a pat-down frisk and discovered a nine-millimeter handgun. The defendant was charged with carrying a concealed weapon. *Id.* at 703, 559 S.E.2d at 829. This Court distinguished certain facts in this case from other unreliable anonymous tip cases. Specifically, this Court noted the tip came from a "face-to-face encounter" rather than an anonymous tele-

phone call, Officer Ivey could observe the woman's demeanor to assess her reliability, and the likelihood she could have been held accountable if her tip proved false was increased by the fact that she engaged with the officer directly. The informant also provided the officer with a reasonable explanation of how she knew of the possibility of criminal activity. *Id.* at 705, 559 S.E.2d at 830; *see also Maready*, 362 N.C. at 618-20, 699 S.E.2d at 567 (police stop of drunk driver based on a tip from another driver met standard of reliability where driver was in a position to observe defendant's erratic driving, she approached the deputies near the scene of the violations giving little time to fabricate the allegations, and the driver placed her anonymity at risk by speaking face to face with the deputies).

Here, contrary to defendant's contention, the stop was not based on an anonymous tip from an unknown, unaccountable informant. The trial court found that "a victim of the fight/assault provided information to Sgt. Horton that the offender in the fight/assault was a tall white male that had been driven away from the scene in a small, dark car that was operated by a white female with blond hair." This finding is supported by Sgt. Horton's testimony at the suppression hearing, and is therefore binding on appeal. *Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826.

Although the record does not reveal the victim's name or give details about the victim's encounter with Sgt. Horton, other than to state he received the information from the victim, we find the facts of this case distinguishable from *Hughes*. A face-to-face encounter with the victim of the crime affords a higher degree of reliability than an anonymous telephone call. The victim of the assault would be in a position to notice the suspect and his departure from the scene of the assault. *See Maready*, 362 N.C. at 619, 669 S.E.2d at 567 (by providing the tip through a face-to-face encounter, an eyewitness was not a completely anonymous informant). In addition, Sgt. Horton's stop was not based solely on the victim's description but also on Sgt. Horton's own observations of the defendant's hurried actions, the fact that it appeared to him that the defendant was trying to avoid him and defendant's proximity to the scene of the assault. Under the totality of the circumstances, the trial court did not err in concluding the stop was based on a reasonable articulable suspicion. *See also State v. Sutton*, 167 N.C. App. 242, 247, 605 S.E.2d 483, 486 (2004) (holding officer's stop of defendant based on pharmacist's description of defendant's activity coupled with officer's observation of defendant handing off an object to another person in

the pharmacy parking lot "provided reasonable suspicion that criminal activity was afoot").

**[2]** Defendant also contends she did not match the tipster's description because she was driving a small light-colored car with a female passenger instead of a small dark car with a male passenger. Defendant argues the trial court's finding that defendant was driving a small dark vehicle is not supported by competent evidence because a video surveillance recording from Sgt. Horton's police vehicle revealed the vehicle to be light-blue in color and Sgt. Horton admitted on cross-examination that the vehicle is light-blue. The fact that the defendant's car did not exactly match the description of the one Sgt. Horton was seeking does not render the stop unreasonable under all of the circumstances. *State v. Buie*, 297 N.C. 159, 162-63, 254 S.E.2d 26, 28-29 (1979), *cert. denied*, 444 U.S. 971, 100 S.Ct. 404, 62 L. Ed. 2d 386 (1979); *Maready*, 362 N.C. at 619, 669 S.E.2d at 567 (citing *Barnard*, 362 N.C. at 247, 658 S.E.2d at 645) (The "overarching inquiry when assessing reasonable suspicion is always based on the *totality* of the circumstances."). Defendant matched the description given to Sgt. Horton of the suspect's driver, a blonde white female in a small car. Sgt. Horton observed defendant driving away from the vicinity of the Budget Inn Motel, the scene of the alleged assault, and driving in a hurried manner as if she was trying to avoid Sgt. Horton. At the time Sgt. Horton detained the defendant, he could not discern whether the passenger was male or female. Sgt. Horton's basis for calling defendant to his vehicle to answer questions in a simple investigatory stop met a "minimal level of objective justification, something more than an unparticularized suspicion or hunch." *Campbell*, 359 N.C. at 664, 617 S.E.2d at 14. We affirm the trial court's order.

Affirmed.

Judges ELMORE and STROUD concur.