IN THE SUPREME COURT OF NORTH CAROLINA

No. 5A14

Filed 19 December 2014

STATE OF NORTH CAROLINA

v.

GLENN EDWARD BENTERS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 750 S.E.2d 584 (2013), affirming an order granting defendant's motion to suppress entered on 24 September 2012 by Judge Carl R. Fox in Superior Court, Vance County. Heard in the Supreme Court on 8 September 2014.

> *Roy Cooper, Attorney General, by Derrick C. Mertz, Assistant Attorney General, for the State-appellant.*

> *Brock & Meece, P.A., by C. Scott Holmes, for defendant-appellee.*

BEASLEY, Justice.

In this appeal we consider the sufficiency of an affidavit in support of an application for a search warrant. We hold that under the totality of the circumstances, the affidavit failed to provide a substantial basis for the magistrate to conclude that probable cause existed. The information available to law enforcement officers from an anonymous tip and from the officers' corroborative investigation was qualitatively and quantitatively deficient, and the affidavit's

material allegations were uniformly conclusory. Accordingly, we affirm the Court of Appeals.

The affidavit at issue provides in relevant part as follows:

> I, Deputy Joseph R. Ferguson, am a certified North Carolina law enforcement officer, sworn and employed by the Vance County Sheriff's Office. I have been a sworn law enforcement officer since 1998. While employed by the Sheriff's Office I have been assigned to the patrol division, the Community Policing Program, and am currently a Detective Lieutenant in the Criminal Investigations and Narcotics Division. I have attended and successfully completed Basic Law Enforcement Training and obtained an Associates Degree in Applied Science in Criminal Justice Technology at Vance Granville Community College. I have received the following training related to the enforcement of North Carolina State Laws: Constitutional Law, Arrest, Search, and, Seizure, Search and Seizure in North Carolina, Criminal Investigations, Search Warrant Preparation, Interview and Interrogation, Advance Death Investigations, and Crime Scene Processing as part of the in service training courses provided by the North Carolina Community College system[.] I have also completed the Drug Law Enforcement Training Program through the Federal Law Enforcement Training Center and attended the Discovery for Law Enforcement Agents Seminar sponsored by the Eastern District of North Carolina's U.S. Attorney's Office. During my career in law enforcement I have investigated over one thousand criminal cases and have made over five hundred arrests many resulting in conviction by trail [sic] or plea bargain in Vance County District and Superior Courts.
>
> On September 29, 2011 Lt. Ferguson, hereby known as your affiant, received information from Detective J. Hastings of the Franklin County Sheriff's Office Narcotics Division about a residence in Vance County that is currently being used as an indoor

marijuana growing operation. Detective Hastings has extensive training and experience with indoor marijuana growing investigations on the state and federal level. Within the past week Hastings met with a confidential and reliable source of information that told him an indoor marijuana growing operation was located at 527 Currin Road in Henderson, North Carolina. The informant said that the growing operation was housed in the main house and other buildings on the property. The informant also knew that the owner of the property was a white male by the name of Glenn Benters. Benters is not currently living at the residence, however [he] is using it to house an indoor marijuana growing operation. Benters and the Currin Road property [are] also known by your affiant from a criminal case involving a stolen flatbed trailer with a load of wood that was taken from Burlington North Carolina. Detective Hastings obtained a subpoena for current subscriber information. Kilowatt usage, account notes, and billing information for the past twenty-four months in association with the 527 Currin Road Henderson NC property from Progress Energy Legal Department. Information provided in said subpoena indicated that Glenn Benters is the current subscriber and the kilowatt usage hours are indicative of a marijuana grow operation based on the extreme high and low kilowatt usage.

Also on 9-29-2011 Detective Hastings and your affiant along with narcotics detectives from the Vance and Franklin County Sheriffs' Office as well as special agents with the North Carolina S.B.I. traveled to the residence at 527 Currin Road Henderson NC[ ]and observed from outside of the curtilage multiple items in plain view that were indicative of an indoor marijuana growing operation. The items mentioned above are as followed [sic]; potting soil, starting fertilizer, seed starting trays, plastic cups, metal storage racks, and portable pump type sprayers. Detectives did not observe any gardens or potted plants located around the residence. Detectives observed a red Dodge full size pickup truck parked by a building located on the curtilage of the residence and heard music coming

from the area of the residence.

After observing the above listed circumstances, detectives attempted to conduct a knock and talk interview with anyone present at the residence. After knocking on the back door, which your affiant knows Benters commonly uses based on previous encounters, your affiant waited a few minutes for someone to come to the door. When no one came to the door, your affiant walked to a building behind the residence that music was coming from in an attempt to find someone. Upon reaching the rear door of the building, your affiant instantly noticed the strong odor of marijuana emanating from the building. Your affiant walked over to a set of double doors on the other side of the building and observed two locked double doors that had been covered from the inside of the building with thick mil black plastic commonly used in marijuana grows to hide light emanated by halogen light typically used in indoor marijuana growing operations. Thick mil plastic was also present on windows inside the residence as well.

Based on these facts your affiant respectfully request[s] a search warrant in order to obtain evidence from the property located at 527 Currin Road Henderson NC . . . .

. . . .

| s/ J. Ferguson | s/ [Magistrate] |
| Affiant | Judge |
| | |
| 9-29-11/ 9/29/11 | 9/29/11 |
| Date | Date |

That same day, a magistrate issued a warrant based upon this affidavit authorizing a search of defendant's home and outbuildings on his property. Law enforcement officers immediately executed the warrant and seized fifty-five

marijuana plants; various indoor growing supplies, including lights, timers, chemicals, water pumps, flexible tubing, humidifiers, and several boxes of Ziploc plastic bags; numerous firearms and ammunition; and $1540 in cash.

A grand jury indicted defendant for maintaining a dwelling to keep a controlled substance (two counts), manufacture of a Schedule VI controlled substance, possession of drug paraphernalia, trafficking in marijuana by manufacture, trafficking in marijuana by possession, and possession with intent to sell or deliver a Schedule VI controlled substance. On 20 February 2012, defendant moved to suppress the items seized under the search warrant, arguing that the search and seizure violated the Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution. On 24 September 2012, the trial court entered an order allowing defendant's motion. The State timely appealed to the Court of Appeals.

A majority of the panel of the Court of Appeals concluded that the affidavit at issue was not supported by probable cause and affirmed the trial court's order allowing defendant's motion to suppress. *State v. Benters*, ___ N.C. App. ___, ___, 750 S.E.2d 584, 591 (2013). The dissent agreed with the majority "that the affidavit did not contain a sufficient factual basis to establish probable cause under the confidential informant standard" because "L[ieutenant] Ferguson's description of the source's reliability was merely conclusory." *Id.* at ___, 750 S.E.2d at 591-92 (Hunter, Robert C., J., dissenting). The dissent, however, would have concluded

that the affidavit was supported by probable cause under an anonymous tip standard because "the affidavit contained detailed information provided by the source which was independently corroborated by experienced officers." *Id.* at ___, 750 S.E.2d at 591. The State appeals to this Court based on the dissent. N.C.G.S. § 7A-30(2) (2013). We now affirm.

The issue before this Court is whether the facts and circumstances set forth in the affidavit establish probable cause. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The "common-sense, practical question" of whether probable cause exists must be determined by applying a "totality of the circumstances" test. *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 2328, 76 L. Ed. 2d 527, 543 (1983); *State v. Arrington*, 311 N.C. 633, 637, 641, 319 S.E.2d 254, 257 (1984). Thus,

> "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a

> particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed.

*Arrington*, 311 N.C. at 638, 319 S.E.2d at 257-58 (quoting *Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332, 76 L. Ed. 2d at 548 (third and fourth alterations in original)). " '[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' " *State v. Riggs*, 328 N.C. 213, 219, 400 S.E.2d 429, 433 (1991) (emphasis omitted) (quoting *Gates*, 462 U.S. at 244 n.13, 103 S. Ct. at 2335 n.13, 76 L. Ed. 2d at 552 n.13). This commonsense, practical inquiry is to be based upon " 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Id.* (quoting *Gates*, 462 U.S. at 231, 103 S. Ct. at 2328, 76 L. Ed. 2d at 544).

Further, "a magistrate is entitled to draw reasonable inferences from the material supplied to him by an applicant for a warrant." *State v. Sinapi*, 359 N.C. 394, 399, 610 S.E.2d 362, 365 (2005) (citing *Riggs*, 328 N.C. at 221, 400 S.E.2d at 434). And we acknowledge that " 'great deference should be paid a magistrate's determination of probable cause and that after-the-fact scrutiny should not take the form of a *de novo* review.' " *Id.* at 398, 610 S.E.2d at 365 (quoting *Arrington*, 311 N.C. at 638, 319 S.E.2d at 258). This deference, however, is not without limitation. A reviewing court has the duty to ensure that a magistrate does not abdicate his or her duty by "mere[ly] ratif[ying] . . . the bare conclusions of [affiants]." *Gates*, 462 U.S. at 239, 103 S. Ct. at 2333, 76 L. Ed. 2d at 549; *see State v. Campbell*, 282 N.C.

125, 130-31, 191 S.E.2d 752, 756 (1972) ("Probable cause cannot be shown by affidavits which are purely conclusory . . . ." (citation and internal quotation marks omitted)); *see also United States v. Leon*, 468 U.S. 897, 914, 104 S. Ct. 3405, 3416, 82 L. Ed. 2d 677, 693 (1984) ("[C]ourts must . . . insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police.") (citations and internal quotation marks omitted), *superseded in part by* Fed. R. Crim. P. 41(e).

Because the affidavit is based in part upon information received by Detective Hastings from a source unknown to Lieutenant Ferguson, we must determine the reliability of the information by assessing whether the information came from an informant who was merely anonymous or one who could be classified as confidential and reliable. *State v. Hughes*, 353 N.C. 200, 203, 539 S.E.2d 625, 628 (2000). This Court has explained that statements against an informant's penal interests and statements given by an informant with a history of providing reliable information to law enforcement carry greater weight for purposes of establishing reliability. *Id.* at 204, 539 S.E.2d at 628-29; *Riggs*, 328 N.C. at 219, 400 S.E.2d at 433 (discussing informant reliability based on an informant's "track record"); *State v. Beam*, 325 N.C. 217, 221, 381 S.E.2d 327, 330 (1989) (acknowledging the credibility of statements against penal interest (citation omitted)); *Arrington*, 311 N.C. at 641, 319 S.E.2d at 259 (discussing the credibility of statements against penal interest); *see Hughes*, 353 N.C. at 204, 539 S.E.2d at 628 (suggesting that "other indication[s]

of reliability" may suffice even in the absence of statements against penal interest or an informant's history of giving reliable information).

When sufficient indicia of reliability are wanting, however, we evaluate the information based on the anonymous tip standard. *Hughes*, 353 N.C. at 205, 539 S.E.2d at 629. An anonymous tip, standing alone, is rarely sufficient, but "the tip combined with corroboration by the police could show indicia of reliability that would be sufficient to [pass constitutional muster]." *Id.* (citing *Alabama v. White*, 496 U.S. 325, 329, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301, 308 (1990)). Thus, "a tip that is somewhat lacking in reliability may still provide a basis for [probable cause] if it is buttressed by sufficient police corroboration." 353 N.C. at 207, 539 S.E.2d at 630 (citation omitted). Under this flexible inquiry, when a tip is less reliable, law enforcement officers carry a greater burden to corroborate the information. *Id.* at 205, 539 S.E.2d at 629. As compared with the less demanding reasonable suspicion standard, probable cause requires both a greater quantity and higher quality of information. *White*, 496 U.S. at 329-30, 110 S. Ct. at 2416, 110 L. Ed. 2d at 308-09.

As a preliminary matter, the State argues that it did not concede the illegality of the law enforcement officers' entry onto defendant's property to conduct a "knock and talk interview" at the back door of defendant's residence or at an outbuilding from which officers heard music playing. *See Benters*, ___ N.C. App. at ___, 750 S.E.2d at 588 (majority) ("The State concedes that the 'knock and talk'

entry onto defendant's property was an illegal search . . . ."); *see also id.* at ___, 750 S.E.2d at 590 ("As previously acknowledged by the State, this entry was illegal and thus the marijuana smell and plastic coverings could not be properly considered in seeking a search warrant."). Having reviewed the opinion below and record on appeal, including the State's briefs to the Court of Appeals, we observe that the State did not expressly concede the point, but rather "[a]ssum[ed], without deciding, that the trial court correctly determined that the officers' entry onto defendant's property to conduct a 'knock and talk' – and further entry onto the property to locate or engage any person near the building from which the music was emanating – was illegal, and omitting this information from the warrant, the warrant was nevertheless valid." Nonetheless, by failing to preserve the issue for appeal or to present any argument whatever, the State limits its arguments and our scope of review to the first three paragraphs of the affidavit. N.C. Rs. App. P. 10(b), 16(b), 28(b)(6).

In its principal argument on appeal, the State argues that the majority of the panel of the Court of Appeals erred by concluding that the first three paragraphs of the affidavit failed to establish probable cause upon which a search warrant could issue. In support of this argument, the State contends that the tip given to Detective Hastings and relayed to Lieutenant Ferguson had sufficient indicia of reliability to provide probable cause. Even if the tip is considered wholly anonymous, the State suggests that law enforcement officers independently

corroborated the tip through Lieutenant Ferguson's prior personal knowledge of defendant and the property, the subpoenaed Progress Energy utility reports, and the officers' personal observations of defendant's gardening supplies. The State further argues that the officers' reliance upon the tip and their interpretation of the investigation must "be viewed through the eyes of a narcotics officer with the appropriate training and experience that both Lieutenant Ferguson and Detective Hastings appeared to have."

With respect to whether the source of the information at issue should be treated as a reliable, confidential informant or an anonymous informant, the affidavit states the following relevant information: (1) the affiant's name; (2) the name of the detective from whom the affiant received the tip; (3) that the detective "met with a confidential and reliable source"; and (4) that the source informed the detective about an indoor marijuana growing operation at a house and other buildings on property owned by defendant.

It is clear from the affidavit that the information provided does not contain a statement against the source's penal interest. Nor does the affidavit indicate that the source previously provided reliable information so as to have an established "track record." Thus, the source cannot be treated as a confidential and reliable informant on these two bases. *Hughes*, 353 N.C. at 204, 539 S.E.2d at 628; *Riggs*, 328 N.C. at 219, 400 S.E.2d at 433; *Beam*, 325 N.C. at 221, 381 S.E.2d at 329-30; *Arrington*, 311 N.C. at 641-42, 319 S.E.2d at 259-60. Nonetheless, the State argues

that because Detective Hastings met "face-to-face" with the source, the source should be considered more reliable, and we acknowledge that Lieutenant Ferguson is entitled to rely upon information reported to him by Detective Hastings. *See State v. Vestal*, 278 N.C. 561, 576, 180 S.E.2d 755, 765 (1971) (citation omitted), *cert. denied*, 414 U.S. 874, 94 S. Ct. 157, 38 L. Ed. 2d 114 (1973).

We already have addressed this issue on similar facts presented in *Hughes*. There we explained that the law enforcement officer who filed the affidavit "had never spoken with the informant and knew nothing about the informant other than [his captain's] claim that he was a confidential and reliable informant." *Hughes*, 353 N.C. at 204, 539 S.E.2d at 628. Although the captain in *Hughes* received the tip from a phone call rather than a face-to-face meeting, the captain told the affiant that the confidential source was reliable. *Id.* at 201, 539 S.E.2d at 627. We concluded that the source must be analyzed under the anonymous tip standard because the affiant had nothing more than the captain's "conclusory statement that the informant was confidential and reliable," *id.* at 204, 539 S.E.2d at 629. We see no reason to reach a different result here. The affidavit does not suggest Lieutenant Ferguson was acquainted with or knew anything about Detective Hastings's source or could rely on anything other than Detective Hastings's statement that the source was confidential and reliable. *Id.*

Authorities cited by the State bolster our decision. *See United States v. Perkins*, 363 F.3d 317, 320-23 (4th Cir. 2004) (explaining that an informant's tip

was reliable when the informant (1) was known to the investigating officer, (2) had provided reliable information on six to ten prior occasions, and (3) lived directly across the street from the defendant, and when material aspects of the tip were corroborated), *cert. denied*, 543 U.S. 1056, 125 S. Ct. 867, 160 L. Ed. 2d 781 (2005); *United States v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000) (explaining that a face-to-face tip gave the officer an opportunity to assess the informant's credibility and demeanor, and the informant's close proximity to the drug sales and her "expos[ure] . . . to the risk of reprisal" by talking with uniformed officers in public bolstered the informant's credibility), *cert. denied*, 531 U.S. 1098, 121 S. Ct. 830, 148 L. Ed. 2d 712 (2001); *State v. Allison*, 148 N.C. App. 702, 705, 559 S.E.2d 828, 830 (2002) (finding that a face-to-face tip allowed the officer to assess the informant's demeanor and "significantly increased the likelihood that [the informant] would be held accountable if her tip proved to be false" (citation omitted)).

In contrast, the affidavit here fails to establish the basis for Detective Hastings's appraisal of his source's reliability, including the source's demeanor or degree of potential accountability. The affidavit does not disclose whether Detective Hastings met his source privately, or publicly and in uniform such that the source could risk reprisal. Moreover, nothing in the affidavit suggests the basis of the source's knowledge. We previously have explained that

> [i]n the absence of a statement detailing the manner in

which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

*State v. Edwards*, 286 N.C. 162, 168, 209 S.E.2d 758, 762 (1974) (citation and quotation marks omitted).

Accordingly, we hold that Detective Hastings's source of information is an anonymous informant. The tip, as averred, amounts to little more than a conclusory rumor, and the State is not entitled to any great reliance on it. Therefore, the officers' corroborative investigation must carry more of the State's burden to demonstrate probable cause. *See White*, 496 U.S. at 330, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309 ("[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable."); *Hughes*, 353 N.C. at 205, 539 S.E.2d at 629.

The State directs our attention to several factors which it believes sufficiently corroborate the anonymous tip. These factors include: (1) Lieutenant Ferguson's knowledge of defendant and his property resulting "from a criminal case involving a stolen flatbed trailer"; (2) utility records for the preceding twenty-four months subpoenaed by Detective Hastings that "indicated that Glenn Benters is the current subscriber and the kilowatt usage hours are indicative of a marijuana grow

operation based on the extreme high and low kilowatt usage"; and (3) the law enforcement officers' observations of "multiple items in plain view that were indicative of an indoor marijuana growing operation," including "potting soil, starting fertilizer, seed starting trays, plastic cups, metal storage racks, and portable pump type sprayers," in the absence of "any gardens or potted plants located around the residence." The State argues that all of these corroborative factors must be "viewed through the eyes of" the officers in light of their training and experience.

The State suggests that law enforcement officers' "corroboration of mundane matters" conveyed by the informant, such as defendant's name and address, increases the reliability of the tip. We agree, but the State's proposition has limited effect. On the fluid balance prescribed by the Supreme Court, a less specific or less reliable tip requires greater corroboration to establish probable cause. *White*, 496 U.S. at 329-30, 110 S. Ct. at 2416, 110 L. Ed. 2d at 308-09 (citations omitted). Thus, some measure of reliability flows from law enforcement officers' corroboration of mundane matters, but such corroboration supports a finding of probable cause only to a coterminous extent. Here, the officers corroborated defendant's name and address through subpoenaed Progress Energy records showing defendant as the current subscriber and through Lieutenant Ferguson's knowledge of defendant and his address from a prior, unrelated criminal charge. The officers' corroboration tends to show they know defendant's identity and address, although it is not clear

that defendant ever resides at this address. Thus, the officers' corroboration adds a small measure of reliability to the anonymous tip, but does little toward establishing probable cause.

With respect to the subpoenaed Progress Energy utility records, we note that this Court has not yet addressed law enforcement officers' use of electricity usage records in an affidavit for a search warrant related to an alleged indoor marijuana growing operation. We are cognizant that we must view the records as part of the totality of the circumstances. As we consider this novel issue before our Court, however, we momentarily consider in isolation the rules regarding this source of information. Having reviewed numerous state and federal authorities that have assessed an affiant's use of utility records, we acknowledge that these records can provide powerful support for probable cause in applications for search warrants, and we adopt the following principles.

In a totality of the circumstances inquiry, the value to be accorded to energy records is, of course, flexible. The weight given to power records increases when meaningful comparisons are made between a suspect's current electricity consumption and prior consumption, or between a suspect's consumption and that of nearby, similar properties. *See, e.g.*, *United States v. Kattaria*, 553 F.3d 1171, 1174 (8th Cir.) (en banc) (per curiam) (Probable cause existed when the affidavit showed, *inter alia*, that "between November 2003 and April 2004, the [defendant's] residence . . . consumed between 1890 and 2213 kilowatt hours of electricity per

month, while neighboring residences of comparable size consumed between 63 and 811 kilowatt hours in the same time period."), *cert. denied*, 558 U.S. 1061, 130 S. Ct. 771, 175 L. Ed. 2d 537 (2009); *United States v. Miller*, No. 1:12CR269–1, 2012 WL 4061771, at *1-2 (M.D.N.C. Sept. 14, 2012) (probable cause found when the affidavit showed, *inter alia*, the defendant's electricity consumption to be nearly three times higher than nine similarly sized houses on his street); *State v. Hook*, 255 Mont. 2, 5, 839 P.2d 1274, 1276 (1992) (finding probable cause when the affidavit, *inter alia*, "recited in detail the power usage, the times of residence by the defendant, previous usage by former occupants, normal residential usage, and comparisons as to these facts"); *State v. Lemonds*, 160 N.C. App. 172, 179, 584 S.E.2d 841, 845-46 (2003) (probable cause found when, *inter alia*, electric bills for the defendant's first home "revealed a dramatic increase in electricity usage during the period of [the] defendant's residency," and electric bills for the defendant's second home, into which he moved during the course of the investigation, revealed a dramatic increase after his occupancy "when compared with the previous occupant's bills for the same time of year").

By contrast, little to no value should be accorded to wholly conclusory, non-comparative allegations regarding energy usage records. *See, e.g., State v. Kaluza*, 272 Mont. 404, 409, 901 P.2d 107, 110 (1995) (concluding probable cause was not established because, *inter alia*, "no basis [wa]s provided for the affiant's conclusory statement concerning his training and experience in investigating marijuana grow

operations" and utility records were insufficient without "detailed comparisons with average and previous resident's usage"); *State v. McManis*, 2010 VT 63, ¶ 18, 188 Vt. 187, 196, 5 A.3d 890, 896 ("Without any information to put the power records into context, the bare recitation of an increase in power usage cannot corroborate the [confidential informant]'s claim of a marijuana growing operation."); *see also Campbell*, 282 N.C. at 130-31, 191 S.E.2d at 756 (requiring affidavits to set forth underlying circumstances rather than merely conclusory allegations (citation omitted)).

Here Lieutenant Ferguson averred that "Detective Hastings has extensive training and experience with indoor marijuana growing investigations on the state and federal level," and that Detective Hastings had subpoenaed defendant's Progress Energy power records. Lieutenant Ferguson then summarily concluded that "the kilowatt usage hours are indicative of a marijuana grow operation based on the extreme high and low kilowatt usage." As explained above, the absence of any comparative analysis severely limits the potentially significant value of defendant's utility records. *Kaluza*, 272 Mont. at 409, 901 P.2d at 110; *McManis*, 2010 VT 63, ¶¶ 16-19, 188 Vt. at 195-97, 5 A.3d at 896. Therefore, these unsupported allegations do little to establish probable cause independently or by corroborating the anonymous tip. *Campbell*, 282 N.C. at 130-31, 191 S.E.2d at 756.

We acknowledge that investigating officers or a reviewing magistrate may have some degree of suspicion regarding defendant's "extreme high and low

kilowatt usage" given that defendant "is not currently living at the residence." These unspecified extremes also may be explained, however, by wholly innocent behavior such as defendant's intermittently visiting his property. Thus, these circumstances may justify additional investigation, but they do not establish probable cause.

We turn next to the officers' observations of multiple gardening items on defendant's property in the absence of exterior gardens or potted plants. In relevant part, the affidavit provides that law enforcement officers

> observed from outside of the curtilage multiple items in plain view that were indicative of an indoor marijuana growing operation. The items mentioned above are as followed [sic]; potting soil, starting fertilizer, seed starting trays, plastic cups, metal storage racks, and portable pump type sprayers. Detectives did not observe any gardens or potted plants located around the residence.

Nothing here indicates "a 'fair probability that contraband or evidence of a crime will be found in a particular place' " beyond Lieutenant Ferguson's wholly conclusory allegations. *Arrington*, 311 N.C. at 638, 319 S.E.2d at 258 (quoting *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332, 76 L. Ed. 2d at 548); *see Riggs*, 328 N.C. at 219-21, 400 S.E.2d at 433-34. The affidavit does not state whether or when the gardening supplies were, or appeared to have been, used, or whether the supplies appeared to be new, or old and in disrepair. Thus, amid a field of speculative possibilities, the affidavit impermissibly requires the magistrate to make what otherwise might be reasonable inferences based on conclusory allegations rather

than sufficient underlying circumstances. This we cannot abide. *Campbell*, 282 N.C. at 130-31, 191 S.E.2d at 756.

With respect to the officers' training and experience, we must "give due weight to inferences drawn from . . . facts by . . . local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911, 920-21 (1996) (observing that "a police officer views the facts through the lens of his police experience and expertise"). The affidavit here sets forth Lieutenant Ferguson's training and experience, including his having been a sworn law enforcement officer since 1998, his employment with the Vance County Sheriff's Office, his current employment as a Detective Lieutenant in the Criminal Investigations and Narcotics Division, his training in "Search[ ] and Seizure, Search and Seizure in North Carolina, Criminal Investigations, [and] Search Warrant Preparation," and his completion of the "Drug Law Enforcement Training Program through the Federal Law Enforcement Training Center." The affidavit also states that "Detective Hastings has extensive training and experience with indoor marijuana growing investigations on the state and federal level." We are not convinced that these officers' training and experience are sufficient to balance the quantitative and qualitative deficit left by an anonymous tip amounting to little more than a rumor, limited corroboration of facts, non-comparative utility records, observations of innocuous gardening supplies, and a compilation of conclusory allegations. *See White*, 496 U.S. at 329-30, 110 S. Ct. at 2416, 110 L. Ed. 2d at 308-

09. Furthermore, we are unaware of any precedent that would permit, much less require, such a heavy reliance upon officers' training and experience as the State calls for here.

Taking the relevant factors together in view of the totality of the circumstances, we conclude that the officers' verification of mundane information, Detective Hastings's statements regarding defendant's utility records, and the officers' observations of defendant's gardening supplies are not sufficiently corroborative of the anonymous tip or otherwise sufficient to establish probable cause, notwithstanding the officers' professional training and experience. Furthermore, the material allegations set forth in the affidavit are uniformly conclusory and fail to provide a substantial basis from which the magistrate could determine that probable cause existed. *Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332-33, 76 L. Ed. 2d at 548-49; *Arrington*, 311 N.C. at 638, 319 S.E.2d at 257-58; *Campbell*, 282 N.C. at 130-31, 191 S.E.2d at 756. Accordingly, although "great deference should be paid a magistrate's determination of probable cause," *Sinapi*, 359 N.C. at 399, 610 S.E.2d at 365 (citation and quotation marks omitted), we hold the affidavit at issue is insufficient to establish probable cause.

In its remaining arguments on appeal, the State notes that the trial court took additional evidence once defendant challenged the search. The State contends that the Court of Appeals erred by relying upon facts elicited at the hearing that

went beyond "the four corners of [the] warrant." The State argues that if additional evidence is considered, the record demonstrates that the officers had probable cause to support a search warrant independent of any information gathered during the allegedly illegal entry onto defendant's property. The State argues, moreover, that had the entry not occurred, "the police unquestionably would have pursued the investigation until it reached a successful conclusion," making it "inevitable" that the marijuana and other items would have been discovered pursuant to a search warrant supported by probable cause.

We acknowledge that the Court of Appeals majority and dissenting opinions made glancing references to additional evidence found during defendant's suppression hearing and it was error to consider this evidence, but in light of our holding and analysis based solely upon the affidavit, we do not believe these errors warrant reversal. Therefore, we need not consider the State's conditional argument regarding inevitable discovery. *See, e.g.*, *Poore v. Poore*, 201 N.C. 791, 792 161 S.E. 532, 533 (1931) ("It is no part of the function of the courts . . . to give advisory opinions . . . .").

For the reasons set forth above, we affirm the opinion of the Court of Appeals.

AFFIRMED.

No. 5A14 – State v. Benters

Justice NEWBY dissenting.

In this case we address the level of corroboration required to substantiate an informant's tip such that probable cause exists to obtain a search warrant for a defendant's property. The majority concludes that, under the anonymous tip standard, "the State is not entitled to any great reliance" on a tip from a known informant. In doing so, the majority ignores the fact that the informant clearly was not anonymous and incorrectly affords his tip the same weight as if he were completely unknown to police. Because a tip provided to police by an identified informant is inherently more reliable than a completely anonymous tip, it should require less independent corroboration. Although purportedly applying a "common sense" approach, the majority's rigid, formalistic dissection of the evidence corroborating the tip undermines the purpose of the required totality of the circumstances test. Here, the information provided in the tip, most of which was corroborated by other evidence, under a common sense application of the totality of the circumstances, establishes probable cause to believe that defendant was growing marijuana on his property. Therefore, the warrant was valid, and the search did not violate the Fourth Amendment. Accordingly, I respectfully dissent.

The Fourth Amendment to the Constitution of the United States contains a guarantee against unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause." In *State v. Arrington* our Court adopted the Supreme Court of the United States' "totality of the circumstances" test

for determining when probable cause exists:

> "The task of the issuing magistrate is simply to make a *practical, common-sense decision* whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place."

311 N.C. 633, 638, 319 S.E.2d 254, 257-58 (1984) (emphasis added) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (1983)). A reviewing court should grant "great deference" to the magistrate's determination of probable cause, *id.* at 638, 319 S.E.2d at 258, keeping in mind that " '[t]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants,' " *State v. Sinapi*, 359 N.C. 394, 398, 610 S.E.2d 362, 365 (2005) (quoting *State v. Riggs*, 328 N.C. 213, 222, 400 S.E.2d 429, 435 (1991)).

Tips from informants can establish probable cause if they are reliable. *See Gates*, 462 U.S. at 227, 233-34, 103 S. Ct. at 2326, 2329-30, 76 L. Ed. 2d at 541, 545. Tips from informants with a proven track record with police are considered trustworthy and can establish probable cause standing alone when the affidavit states that the informant is reliable and provides factual grounds to support that belief. *See State v. Isleib*, 319 N.C. 634, 635, 639, 356 S.E.2d 573, 574-75, 577 (1987) (concluding that an informant's tip alone established probable cause because the informant had provided information to police on three prior occasions that had led

to arrests and convictions). On the other hand, anonymous tips are generally insufficient standing alone to establish probable cause. *Alabama v. White*, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415-16, 110 L. Ed. 2d 301, 308 (1990).

Not all anonymous tips, however, are created equal. Some bear more indicia of reliability than others, and in evaluating the totality of the circumstances, "the indicia of the tip's reliability are certainly among the circumstances that must be considered." *State v. Maready*, 362 N.C. 614, 619, 669 S.E.2d 564, 567 (2008) (citing *White*, 496 U.S. at 330, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309). "[The] view that tips fall into two stark categories that are wholly anonymous or wholly non-anonymous is inconsistent both with reality and with Fourth Amendment law. For in reality, tips fall somewhere on a spectrum of reliability . . . ." *United States v. Perkins*, 363 F.3d 317, 324 (4th Cir. 2004), *cert. denied*, 543 U.S. 1056, 125 S. Ct. 867, 160 L. Ed. 2d 781 (2005); *see also Gates*, 462 U.S. at 232, 103 S. Ct. at 2329, 76 L. Ed. 2d at 544 ("[T]ips doubtless come in many shapes and sizes" and " 'may vary greatly in their value and reliability.' Rigid legal rules are ill-suited to an area of such diversity." (quoting *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612, 617 (1972))). In a recent decision, the United States Supreme Court observed that even a wholly anonymous tip, without more, "can demonstrate sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop." *Navarette v. California*, ___ U.S. ___, ___, 134 S. Ct. 1683, 1688, 188 L. Ed. 2d 680, 687 (2014) (alteration in original) (quotation marks

omitted) (concluding that a tip from an anonymous 911 caller that another vehicle ran her off the road "bore adequate indicia of reliability for the officer to credit the caller's account" because the caller witnessed the dangerous driving and reported it immediately and because a 911 caller may later be identified (quoting *id*. at ___, 134 S. Ct. at 1688-90, 188 L. Ed. 2d at 687-89)).

When, however, the anonymous tip alone is insufficient, "the tip combined with corroboration by the police could show indicia of reliability that would be sufficient to [pass constitutional muster]." *State v. Hughes*, 353 N.C. 200, 205, 539 S.E.2d 625, 629 (2000). Thus, even when analyzing tips under the anonymous tip standard, there is a sliding scale, and the extent of independent corroboration required to render a tip reliable becomes a factual determination, "tak[ing] into account all the facts surrounding [the] tip." *Perkins*, 363 F.3d at 324; *see Hughes*, 353 N.C. at 206, 539 S.E.2d at 630 (" '[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.' " (quoting *White*, 496 U.S. at 330, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309)).

As illustrated by *Navarette*, a tipster is not treated as wholly unreliable simply because the affidavit does not disclose the tipster's prior experience with law enforcement. It follows that less independent verification is needed to substantiate a tip from an informant who is readily identifiable by police than one who is completely anonymous. *See Maready*, 362 N.C. at 619-20, 669 S.E.2d at 567-68

(giving significant weight to a tip when the tipster provided information to police in a face-to-face encounter and was, therefore, not completely anonymous); *see also Perkins*, 363 F.3d at 323 ("Where the informant is known . . . , an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable . . . ."). Moreover, because affidavits are practical documents and the existence of probable cause is a commonsense determination, the summary nature of the affidavit becomes less important when a tip shows some indicia of reliability and is corroborated by independent investigation.

Here the majority's analysis recognizes that the informant was known and identified to police, yet it ignores that crucial fact to conclude instead that he "is an anonymous informant" whose tip "amounts to little more than a conclusory rumor." However, the affidavit states that "within the past week [an officer] *met* with a *confidential and reliable source of information* that told him an indoor marijuana growing operation was located at [defendant's property]." (Emphasis added.) Because the police knew the informant's identity, the informant's tip had some degree of reliability at the outset. Though the tip, at face value, may not be enough on its own to establish probable cause, the tip is more reliable than if the informant were completely anonymous. *See Maready*, 362 N.C. at 619-20, 669 S.E.2d at 567-68. Therefore, even without specific details on why the informant was a reliable source of information, the tipster should be afforded greater weight in the totality of the circumstances than if he were unknown and unidentified. *See id.* at 619, 669

S.E.2d at 567 ("The potential indicia of reliability include all 'the facts known to the officers from personal observation' including those that do not necessarily corroborate or refute the informant's statements." (internal citation omitted)).

The detectives' subsequent investigation into the informant's allegations sufficiently corroborated the tip that defendant was conducting a marijuana growing operation, and when taken together and viewed through the lens of common sense, the tip and corroborating evidence detailed in the first three paragraphs of the affidavit established " 'a fair probability that contraband or evidence of a crime [would] be found' " on defendant's property. *Arrington*, 311 N.C. at 638, 319 S.E.2d at 258 (quoting *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332, 76 L. Ed. 2d at 548). In the tip, the informant did not simply say that there was a marijuana growing operation. He identified defendant by name and appearance, provided defendant's address, specified that defendant was not currently living at the residence, and described the buildings that defendant was using to house the marijuana growing operation. The affiant was also familiar with defendant and his property from a prior, unrelated criminal case. Based on the tip, which already bore some indicia of reliability, detectives obtained utility records for the address and learned that defendant was the current subscriber, confirming a detail provided by the informant. Furthermore, according to a law enforcement officer with "extensive training and experience with indoor marijuana growing investigations on the state and federal level," the two year history of "extreme high and low kilowatt usage"

was "indicative of a marijuana grow operation," just as the informant said.

The majority concludes for the first time that the opinion of a trained and experienced detective who analyzed the power usage is not sufficient, absent a comparative analysis, despite the fact that the detective reviewed power records for the preceding two years. In doing so, the majority ignores the expertise of trained and experienced law enforcement officers. Under the majority's reasoning, detectives should have invaded the privacy of innocent, neighboring landowners by obtaining their power records in order to conduct a comparative analysis. Even so, detectives here did not rely solely on the utility bills to establish probable cause; rather, the unusual power usage was just another piece of evidence that helped bolster the informant's reliability and corroborate his tip that defendant was housing an indoor marijuana growing operation.

Detectives further confirmed the information in the tip by conducting surveillance of defendant's property. Despite the noticeable absence of gardens or potted plants around the property, officers observed multiple horticultural items in plain view, including "potting soil, starting fertilizer, seed starting trays, plastic cups, metal storage racks, and portable pump type sprayers." Based on their training and experience, detectives determined that these objects were consistent with a marijuana growing operation. This observation is yet another circumstance establishing the informant's reliability and lending support to the tip that defendant was operating an indoor marijuana growing operation.

Moreover, the fact that any of the corroborating evidence can be explained by innocent behavior does not mean it cannot also be used to establish probable cause, as the majority suggests. The possibility of innocent behavior does not rule out probable cause. *Gates*, 462 U.S. at 243 n.13, 103 S. Ct. at 2335 n.13, 76 L. Ed. 2d at 552 n.13 ("[I]nnocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens' demands. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." (internal citation omitted)).

Applying the required commonsense approach to the totality of the circumstances, the information contained in the affidavit established a "fair probability" that defendant was conducting an indoor marijuana growing operation. Detectives received a tip from an identified informant who provided details about defendant, his property, and his indoor marijuana growing operation. In a subsequent investigation, a trained and experienced detective concluded that defendant's power usage was indicative of a marijuana growing operation. Furthermore, surveillance of defendant's property produced evidence consistent with a marijuana growing operation. This circumstantial evidence unequivocally supported the initial, detailed tip. Even under an anonymous tip standard, a known informant's tip must be afforded more weight than if he were wholly

anonymous. Each piece of independent, corroborating evidence thereafter substantiated the informant's reliability, and the tip, combined with the corroborating evidence, provided a sufficient basis for the warrant. Therefore, the search was lawful. Accordingly, I respectfully dissent.