STROUD, Judge, concurring in part and dissenting in part.
The majority opinion considers thirteen images: (1) the "granddaughter image"[2] which was Ms. Jones's primary concern when she *908 came to the Sheriff's Department because it was her granddaughter; (2) two images of nude prepubescent girls in sexual positions[3] ("two seen images") discovered in the process of confirming the information law enforcement officers were given about the granddaughter image; (3) and the remaining ten ("ten deleted images") discovered through a data recovery method because they had been deleted from the thumb drive. It is important to distinguish the three categories of photographs from the outset because Detective Bailey's knowledge at certain points in time is relevant to the legal analysis and to the question remanded to the trial court regarding probable cause.
It is also essential to understand the convictions regarding the different categories of images. As I will further discuss later in this dissent a major flaw in this appeal is that we have none of the images in the record before us, making it difficult to pair a particular image with a specific conviction. We can determine from the indictment and jury instructions that defendant was convicted of secretly peeping based upon the granddaughter image. It also appears that a second-degree exploitation conviction was likely based upon the granddaughter image. As noted by the majority there were thirteen photographs. Defendant was convicted of twelve counts of third-degree sexual exploitation, one count of second-degree sexual exploitation, and one count of secretly peeping, for fourteen total convictions. Logically this could mean the second-degree exploitation conviction was based upon the granddaughter image and the twelve third-degree exploitation convictions were based upon the twelve images other than the granddaughter image. So I will assume that as to the granddaughter image defendant was convicted of secretly peeping and second-degree sexual exploitation, and as to the two seen images and the ten deleted images, defendant was convicted of twelve counts of third-degree sexual exploitation.[4]
*737 *909 Now that I have clarified the images and convictions associated with the images, I will address the reasons for my dissent. I would affirm the trial court's denial of defendant's motion to suppress the granddaughter image based upon the private search doctrine, and I would find no error as to defendant's convictions for secretly peeping and second-degree exploitation of a minor. I dissent in part because there is no need to remand for any issue for the convictions based upon the granddaughter image. Because Detective Bailey found the two seen images while verifying Ms. Jones's report of the granddaughter image, I again would affirm the trial court in denying defendant's motion to suppress based upon the private search doctrine. I also would find no error on the third-degree sexual exploitation of a minor convictions entered based on the two seen images, and again remand is unnecessary on those images. As to the remaining ten deleted images and the ten related convictions for third-degree sexual exploitation of a minor, I agree with the majority these images do not fall under the private search doctrine and remand is necessary for the trial court to consider whether Detective Bailey had probable cause to obtain the search warrant. As to the ten deleted images and their related convictions, I concur in result only.
I. Evidence Not in the Record on Appeal
As I have mentioned, this appeal was filed on issues arising from thirteen photographic images and none were provided to this Court. If a party is seeking relief based upon a piece of evidence, that evidence must be in the record before this Court:
Pursuant to the North Carolina Rules of Appellate Procedure, our review is limited to the record on appeal and any other items filed with the record in accordance with Rule 9(c) and 9(d).
The Court of Appeals can judicially know only what appears of record. Matters discussed in a brief but not found in the record will not be considered by this Court. It is incumbent upon the appellant to see that the record is properly made up and transmitted to the appellate court.
N.C. Concrete Finishers, Inc. v. N.C. Farm Bureau Mut. Ins. Co. , 202 N.C. App. 334, 337, 688 S.E.2d 534, 536 (2010) (citations, quotation marks, and ellipses omitted). The burden is on the appellant to ensure that all the evidence necessary to understand his argument is in our record. See generally id. Defendant would prefer that we lump all of the images together in the legal analysis-as the majority has-since that *910 would increase his chances of having more of his convictions reversed. But defendant should not benefit from any deficiency in the record.
II. Granddaughter Image
As this Court has noted before, "It is said that a picture is worth a thousand words. In this case, a picture would be worth several thousand words[.]" State v. Sutton , 232 N.C. App. 667, 673, 754 S.E.2d 464, 468 (2014). None of the thirteen images were provided to this Court, and on the granddaughter image specifically, this Court should make no assumptions of potential innocence about that image since we have not seen it. Perhaps someone could imagine an innocent reason for an unrelated adult male to have a photograph of his girlfriend's nine-year-old granddaughter's breasts stored in his photographs; someone could also easily imagine other reasons for the photograph and those reasons would provide not only probable cause for a future search warrant based upon the image but also grounds for a criminal conviction. The jury saw the image and they determined it violated North Carolina General Statute § 14-202(g) and convicted defendant of possessing a photographic image from peeping; this conviction means the jury found that defendant had taken the photograph "for the purpose of arousing or gratifying the sexual desire[.]" The "purpose of arousing or gratifying the sexual desire" is an element of the crime which the trial court instructed the jury on, and the jury unanimously found the granddaughter image to have been taken for such a purpose.
*738 The majority's characterization of the granddaughter image as "not obviously child pornography" is perhaps correct but misleading as it ignores the fact that a partially nude photograph of a child may violate the law, as this one did for secret peeping and apparently second degree sexual exploitation, even if it is not "obviously pornographic." My primary concern is that the majority's focus on the term "pornography" could lead the trial court astray on remand. The trial court need not consider the granddaughter image to be child pornography to find probable cause for issuance of the warrant. It is true that the warrant affidavit alleged probable cause to search for "images of child pornography[,] but it also alleged probable cause to believe the search may reveal "evidence of additional victims and crimes committed in this case."
As the majority notes, the magistrate must be able
to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place and the trial court *911 must review to ensure that the magistrate had a substantial basis for concluding that probable cause existed.
State v. Benters , 367 N.C. 660, 664, 766 S.E.2d 593, 597-98 (2014) (citation, quotation marks, ellipses and brackets omitted).
Even if all of the other images are excluded from consideration, the granddaughter image along with the other information in the warrant application and affidavit could support a finding of probable cause to issue the search warrant. Detective Bailey averred that in 2001 "there was an incident regarding child pornographic pictures[;]" in 2001 Ms. Jones's daughter, whom she had with defendant, had claimed defendant had "touched me down there[;]" and Ms. Jones also turned over a floppy disk drive from the 2001 "incidents" which she reported contained "children engaged in multiple sex acts." The passage of time since 2001 does not eliminate the potential import or relevance of the "incidents" of potential sexual molestation of a child and possession of child pornography in considering probable cause for a search warrant. And because the granddaughter image is evidence of criminal activity, it should also be an important part of the trial court's analysis on remand of whether there was probable cause for issuance of a search warrant to determine if the thumb drive may contain more similarly incriminating images.
III. The Two Seen Images
Turning now to the two images Detective Bailey saw prior to the granddaughter image, while I generally agree with the majority's analysis of the private search doctrine and determination that a thumb drive is not a single container, the majority's analysis overlooks the fact that Detective Bailey attempted to limit his initial search to find the image reported by Ms. Jones. Detective Bailey acted within the proper scope of the private search doctrine in his discovery of the granddaughter image and the two seen images as he was trying to confirm the existence of the granddaughter image. Ms. Jones brought the thumb drive to the Sheriff's Department. Ms. Jones did not specify which folder or sub-folder her granddaughter's photo was in, nor did she seem aware there were separate folders on the drive. Ms. Jones testified at the suppression hearing:
Q. Okay. So, as you clicked on each folder or sub-folder, you would open them up and see what the pictures were?
A. Yeah, the pictures were all in one folder and then the other folders were like movies because he likes military movies and, you know, action movies and that-that was it.
*912 Q. Do you remember the name of the folder or any of the sub-folders?
A. I don't think the folders had a title . It was just a thumb-it's the title of the thumbdrive, purple rain.
(Emphasis added.)
Since Ms. Jones could not direct Detective Bailey to a particular folder, he could not go directly to the image but conducted his search reasonably considering the information Ms. Jones had given him. It is true, as the majority points out, that the thumb drive had many folders and sub-folders, but Ms. Jones did not understand how the data was *739 organized on the drive.[5] We should not require individuals who take digital media to law enforcement and report potential sexual exploitation or abuse of children to be IT experts. Ms. Jones's understanding was that the thumb drive overall was entitled "purple rain" and she did not realize that "purple rain" was the entire drive which contained folders and sub-folders. The trial court also found in its order that Detective Bailey attempted to confirm the existence of the "granddaughter image" and discovered "photographs of other nude or partially nude prepubescent females posing in sexual positions." Detective Bailey specifically testified:
Q. All right. So, at that point were you verifying what Ms. Jones had told you she had observed on the flashdrive?
A. Yes.
Q. And when you were able to verify what she told you she had seen on the flashdrive, what did you do?
A. Then I completed my search.
Thus, the only evidence before the trial court was that Detective Bailey discovered the two seen images of prepubescent girls in sexual positions before he found the granddaughter image because upon discovering that image he stopped his search.
*913 "[T]here is a remarkable dearth of federal jurisprudence elaborating on what types of investigative actions constitute exceeding the scope" of a private search. U.S. v. Runyan , 275 F.3d 449, 461 (5th Cir. 2001) (quotation marks and footnote omitted). The same is true of state court jurisprudence. The unique factual situations of each private search and the particular "container" involved make cases difficult to compare. I have sought without success to find another case with a factual situation as presented here, where a law enforcement officer engages in a reasonably limited search of a drive only to confirm what the private searcher has reported but sees other evidence during that search because the private searcher's report on the organization of the drive was inaccurate or incomplete. But in Runyan the Fifth Circuit set out what I deem to be a reasonable "guideline" in considering the issue before us:
The guideline that emerges from the above analysis is that the police exceed the scope of a prior private search when they examine a closed container that was not opened by the private searchers unless the police are already substantially certain of what is inside that container based on the statements of the private searchers, their replication of the private search, and their expertise. This guideline is sensible because it preserves the competing objectives underlying the Fourth Amendment's protections against warrantless police searches. A defendant's expectation of privacy with respect to a container unopened by the private searchers is preserved unless the defendant's expectation of privacy in the contents of the container has already been frustrated because the contents were rendered obvious by the private search. Moreover, this rule discourages police from going on fishing expeditions by opening closed containers. Any evidence that police obtain from a closed container that was unopened by prior private searchers will be suppressed unless they can demonstrate to a reviewing court that an exception to the exclusionary rule is warranted because they were substantially certain of the contents of the container before they opened it.
Id. at 463-64. (emphasis added).
Applying this "guideline" here, the purple thumb drive was "a closed container" which was opened by Ms. Jones, a private searcher. Id. at 463. Ms. Jones's statement to Detective Bailey was that the images were all in one folder, and she did not believe the drive had multiple folders *914 or sub-folders. Detective Bailey was "substantially certain" the drive would contain the "granddaughter image" as described by Ms. Jones. Id. Detective Bailey *740 sought to replicate Ms. Jones's private search but since she did not understand the organization of the drive, he could not go directly to the particular image he was seeking. Detective Bailey saw other images before he found the one he was seeking, but upon finding the granddaughter image he stopped and sought a search warrant. Detective Bailey did not go on a "fishing expedition" after finding the granddaughter image. Id. at 464. This case differs from any other I have been able to find because Detective Bailey limited his search to a reasonable effort to find exactly what Ms. Bailey reported and then stopped and got a search warrant.
Due to Detective Bailey's attempts to limit his search only to seeking the evidence Ms. Jones had brought to his attention, the majority's analysis wrongly requires perfection from a private searcher who reports finding contraband and a law enforcement officer who seeks to confirm existence of contraband as reported by a private searcher. Ms. Jones did not understand the internal organization of the thumb drive but described it to Detective Bailey as best she could. And by the majority's analysis, unless Detective Bailey had gone directly to the specific granddaughter image identified by Ms. Jones upon opening the drive, he would unconstitutionally exceed the scope of her private search. But had Detective Bailey attempted to get a search warrant without looking at the thumb drive to confirm Ms. Jones's report, he would not have had enough information to find probable cause to support a search warrant. If we require perfection of private searchers and law enforcement officers, law enforcement officers would have to get a search warrant before trying to confirm the private searcher's report of information on any type of digital media or device. Otherwise, they risk inadvertently finding an incriminating image before finding the one reported and then all of the evidence may be suppressed. The majority places law enforcement officers in a Catch 22 of being unable to confirm the private searcher's report without a search warrant because of the risk of accidental discovery of an image other than the one reported but being unable to get a search warrant without confirming the report.
The granddaughter image and two seen photos Detective Bailey found while searching for the granddaughter image fall within the scope of the private search doctrine, and they too were properly not suppressed by the trial court. Furthermore, the granddaughter image and the two seen images would support probable cause for the other ten *915 deleted images, although I agree with the majority that is a determination the trial court must ultimately make for itself.
IV. The Ten Deleted Images
Last, as to the ten deleted images discovered after the search warrant was issued and upon forensic analysis of the drive, I agree that the private search doctrine did not extend to these images. The trial court should use the information in the search warrant affidavit and application, the granddaughter image, and the two seen images to determine whether there was probable cause to issue the search warrant which ultimately led to the discovery of the ten deleted images. I therefore concur with the majority to remand to the trial court to determine probable cause for issuance of the search warrant for the ten deleted images.
In summary, I dissent on remand regarding the images and related convictions for secretly peeping and second-degree exploitation as to the granddaughter image and the convictions of third-degree exploitation as to the two seen images. I concur in remanding for a determination of probable cause as to the ten deleted images.

I believe the majority's use of the term "granddaughter image" is misleading because the child in the image is not defendant's granddaughter; this is important in the consideration of probable cause because any implication of familial relationship or affection between the child in the image and defendant is false. Defendant was the boyfriend of the child's grandmother. Nonetheless, I will refer to the image as the "granddaughter image" to avoid confusion.

The majority opinion never states that Detective Bailey saw two other concerning images, but it does state there were twelve images at issue in addition to the granddaughter image, and ten of the twelve Detective Bailey could not have seen while looking for the granddaughter image because they had been deleted and were only discovered after the search warrant was issued and further analysis was performed on the thumb drive. This means there were two images at issue Detective Bailey would have seen while looking for the granddaughter image and because the trial court found as an unchallenged fact that while looking for the granddaughter image "Detective Bailey saw photographs of other nude or partially nude prepubescent females posing in sexual positions[,]" (emphasis added), those photographs must be the two not mentioned by the majority.

I also make this assumption because it is the defendant's duty to make sure the record is complete and includes all of the information necessary to understand the issues presented. See N.C. Concrete Finishers, Inc. v. N.C. Farm Bureau Mut. Ins. Co. , 202 N.C. App. 334, 337, 688 S.E.2d 534, 536 (2010).

The trial court found that "[t]he CSI technician placed the purple flash drive into CSI's computer and selected the folder that had been identified by Ms. Jones as contained the picture of her granddaughter[.]" "Folder" was the word Ms. Jones used in her testimony, but in actuality she only identified the "drive" - the purple rain thumb drive - and not the folder. There were many folders and sub-folders to choose from within the purple rain thumb drive, and Ms. Jones had not clarified to Detective Bailey which one contained the granddaughter image.